[No. C062466. Third Dist. June 11, 2010.]

In re TIMOTHY ROSS on Habeas Corpus.

COUNSEL

Michael Satris, under appointment by the Court of Appeal, for Petitioner Timothy Ross.

Edmund G. Brown, Jr., Attorney General, Julie L. Garland, Assistant Attorney General, Jennifer A. Neill and Amy Daniel, Deputy Attorneys General, for Respondent State of California.

OPINION

**SCOTLAND, P. J.**—When the Board of Parole Hearings (Board) determines that a prisoner sentenced to an indeterminate prison term is suitable for parole (Pen. Code, § 3041), the Governor has the authority to review the matter de novo and to reverse or modify the Board's parole decision. (Cal. Const., art. V, § 8, subd. (b); Pen. Code, § 3041.2, subd. (b); *In re Lawrence* (2008) 44 Cal.4th 1181, 1204 [82 Cal.Rptr.3d 169, 190 P.3d 535] ["[T]he Governor undertakes an independent, de novo review of the inmate's suitability for parole . . . ."] (hereafter *Lawrence*).) When the Board or Governor finds a prisoner unsuitable for parole, the prisoner may seek judicial review, by petition for writ of habeas corpus. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 652, 658 [128 Cal.Rptr.2d 104, 59 P.3d 174] (hereafter *Rosenkrantz*).) The

court's review "is limited to ascertaining whether there is some evidence in the record that supports [the unsuitable for parole finding]" (*id.* at p. 677), i.e., there is some evidence that, at the time parole was denied, the prisoner "*continues* to pose an unreasonable risk to public safety [if released from prison]" (*Lawrence, supra,* 44 Cal.4th at p. 1221, original italics ["current dangerousness" test]).

In 2006, the Governor found that Timothy Ross's "criminal history, the 'extremely brutal and callous' nature of the murder [that he committed, resulting in incarceration for an indeterminate term up to life imprisonment], and his misconduct in state prison, including threatening prison staff, demonstrated that despite his rehabilitative efforts, his release would pose an unreasonable risk of danger to society." (*In re Ross* (2009) 170 Cal.App.4th 1490, 1496 [88 Cal.Rptr.3d 873] (hereafter *Ross*).)

This court granted Ross's petition for writ of habeas corpus, but not on the ground that there was no evidence to support the Governor's finding. Indeed, we concluded Ross's "especially heinous, atrocious, or cruel method of murdering the victim; his prior acts of violence; his subsequent threats to prison staff after incarceration; and *a psychologist's opinion that defendant 'continues to exhibit dependent features and an exaggerated need for acceptance' (a mental state that had contributed to his history of violent crime)* [were] some evidence supporting the Governor's finding that [Ross] was unsuitable for parole in 2006." (*Ross, supra,* 170 Cal.App.4th at p. 1497, italics added.)

We were compelled to grant the petition for two reasons. First, the Governor's decision, issued prior to the Supreme Court's decision in *Lawrence, supra,* 44 Cal.4th 1181, did not contain the "explicit 'articulation of a rational nexus between th[e] facts and current dangerousness' " thereafter required by *Lawrence.* (*Ross, supra,* 170 Cal.App.4th at p. 1497.)[1] Second, the Governor did not cite the mental state evidence italicized above, and it would have been inappropriate for us, as a court, to " 'salvage' " the Governor's otherwise inadequate findings by relying on evidence not articulated in his decision. (*Ross,* at p. 1513.) Yet, we could not ignore that critical piece of mental state evidence because, when he made the parole decision,

---

[1] We observed that the Governor could not be faulted for not having been more specific in stating his reasons for reversing the Board's decision. This was so because the controlling Supreme Court authority when the Governor made his decision (*Rosenkrantz, supra,* 29 Cal.4th 616) had approved a similar decision of a Governor that reversed a parole suitability decision by the Board without the specificity that was later required by *Lawrence.* (*Ross, supra,* 170 Cal.App.4th at p. 1497.)

the Governor might have relied upon the mental state evidence without explicitly saying so, since the controlling Supreme Court authority did not require him to specifically identify the evidence upon which he relied in finding Ross unsuitable for parole.

Thus, we remanded the matter to the Governor "with directions to vacate his decision of October 10, 2006, which reversed the Board's finding in 2006 that [Ross] was suitable for parole, and to reconsider the matter consistent with the standards articulated in *Lawrence, supra,* 44 Cal.4th 1181." (*Ross, supra,* 170 Cal.App.4th at p. 1515.)

On remand, in a decision dated April 9, 2009, the Governor again reversed the Board's 2006 parole ruling because the evidence, "along with the risk assessment contained in [Ross's] most recent mental-health evaluation [in 2008], indicate[d] to [the Governor] that Mr. Ross still pose[d] a risk of recidivism and violence, and that his release from prison at this time would pose an unreasonable risk to public safety."

It is Ross's new petition for writ of habeas corpus that is now before us. He contends the Governor's decision in 2009 to once again reverse the Board's parole suitability finding in 2006 is "unlawful" because the Governor considered new evidence (the mental evaluation in 2008) provided to the Governor by the Board. He argues that, by considering new evidence, the Governor (1) "arbitrarily disregarded" this court's "implicit[]" directive in *Ross, supra,* 170 Cal.App.4th 1490, to reevaluate the matter based only on evidence considered by the Board in 2006, and (2) "arbitrarily disregarded California Constitution, article V, section 8(b)" and Penal Code section 3041.2, which, according to Ross, "contemplated gubernatorial review of the record that the Board reviewed when it made its parole decision."

At oral argument in this court, Ross's counsel took the position that, even if the 2008 mental health evaluation had been favorable to Ross, the Governor could not consider it. For example, if the 2008 evaluation had concluded Ross no longer exhibited dependent features and an exaggerated need for acceptance (a mental state that had contributed to his history of violent crime and constituted some evidence, along with other facts, to support the Governor's 2006 finding that Ross posed a then current, unreasonable risk to public safety if he were released on parole), the Governor would have had to ignore the 2008 evidence favorable to Ross. Thus, the position taken by Ross's counsel would mean that, when reconsidering the matter in 2009, the Governor could have denied parole based in part on the outdated 2006 mental health evaluation, and Ross could not complain

because he takes the position that the new evidence, the 2008 evaluation, would have to be ignored.

We shall deny Ross's petition. As we will explain, when, on remand after the granting of a petition for writ of habeas corpus, a Governor reconsiders whether a prisoner is suitable for parole, our ruling in *Ross*, rulings of the California Supreme Court, and the applicable constitutional provision and statute, all permit the Governor to rely on new evidence provided to the Governor by the Board and regarding which the inmate has had an opportunity to respond. This is so because the test the Governor must apply is whether, *at the time the parole decision is made*, the prisoner "*continues* to pose an unreasonable risk to public safety [if released from prison]." (*Lawrence, supra,* 44 Cal.4th at p. 1221, original italics.) Thus, if for the proceeding on remand, the Board provides the Governor with such new evidence (evidence unavailable when the Board made *its* parole decision) regarding whether the prisoner would pose a risk to public safety if released on parole, the evidence must be considered by the Governor. After all, "public safety is the overarching consideration for both the Board and the Governor [in determining whether a prisoner serving an indeterminate sentence should be released on parole]." (*Id.* at p. 1209.)

## FACTS AND PROCEDURAL BACKGROUND

Ross was sentenced to a term of 15 years to life in prison for a second degree murder that he committed in 1984. Twenty-two years after the killing, the Board found Ross suitable for parole. However, exercising the authority vested in him by Penal Code section 3041.2, the Governor reversed the Board's decision. The Governor did so because he found Ross's "criminal history, the 'extremely brutal and callous' nature of the murder, and his misconduct in state prison, including threatening prison staff, demonstrated that despite his rehabilitative efforts, his release would pose an unreasonable risk of danger to society." (*Ross, supra,* 170 Cal.App.4th at p. 1496.)[2]

Ross filed a petition for writ of habeas corpus challenging the Governor's decision. This court granted the petition and remanded the matter to the Governor with directions to (1) vacate his decision reversing the Board's

---

[2] Details of the murder committed by Ross; his prior criminal history, including other acts of violence; the role his drinking of alcohol played with respect to the murder and his prior violent acts; his misconduct in prison while incarcerated for the murder, including threats to prison staff; his positive institutional behavior and participation in educational and self-help programs; and the mental evaluations of Ross presented to the Board in 2006 are set forth in *Ross, supra,* 170 Cal.App.4th 1490.

finding that Ross was suitable for parole, and (2) reconsider the matter consistent with the standards articulated by the California Supreme Court in *Lawrence, supra,* 44 Cal.4th 1181, a decision filed after the Governor had reversed the Board's finding. (*Ross, supra,* 170 Cal.App.4th at pp. 1497, 1515.)

As we explained, Ross's "especially heinous, atrocious, or cruel method of murdering the victim; his prior acts of violence; his subsequent threats to prison staff after incarceration; and *a psychologist's opinion that [Ross] 'continues to exhibit dependent features and an exaggerated need for acceptance' (a mental state that had contributed to his history of violent crime)* [were] some evidence supporting the Governor's finding that [Ross] was unsuitable for parole in 2006." (*Ross, supra,* 170 Cal.App.4th at p. 1497, italics added.)

We nonetheless were compelled to grant Ross's petition and to remand the matter to the Governor for reconsideration because (1) his decision did not contain the "explicit 'articulation of a rational nexus between th[e] facts and current dangerousness' " now required by *Lawrence, supra,* 44 Cal.4th 1181, an opinion issued after his decision; and (2) he did not cite the mental state evidence italicized above, but might have relied on it without explicitly saying so, since the controlling Supreme Court authority at the time of the Governor's decision did not require him to specifically identify the evidence upon which he relied in finding Ross unsuitable for parole. (*Ross, supra,* 170 Cal.App.4th at pp. 1497, 1513.)

On remand, in a decision dated April 9, 2009, the Governor again reversed the Board's 2006 parole ruling because the evidence, "along with the risk assessment contained in [Ross's] most recent mental-health evaluation [in 2008], indicate[d] to [the Governor] that Mr. Ross still pose[d] a risk of recidivism and violence, and that his release from prison at this time would pose an unreasonable risk to public safety."

In making this finding, the Governor specifically cited (1) the " 'especially heinous, atrocious and cruel manner' " in which Ross and a companion murdered the victim, a killing that "involved some level of premeditation" and a victim who was "particularly vulnerable";[3] (2) Ross's prior "criminal

---

[3] "[T]he evidence supports a reasonable inference that [Ross] and his accomplice met the intoxicated victim in the bar where they were drinking together, and then took advantage of the victim's vulnerable state (his intoxication) to lure him to come with them in his truck so they could drive to an isolated location, beat him into unconsciousness to steal his money, then dump his body, 'head first, face down,' over an embankment out of sight, and leave him there to die." (*Ross, supra,* 170 Cal.App.4th at pp. 1506–1507.)

record, including convictions for violent and assaultive behavior";[4] (3) Ross's history of "abusing alcohol"; (4) Ross's misconduct while in prison as a result of his murder conviction—he "was disciplined five times for threatening staff, disrupting the hospital unit, fighting, and participating in a work strike" and "was also counseled twice for other misconduct, most recently in 2008"; and (5) "mental-health evaluator . . . concerns."

The mental health evaluation cited by the Governor was not the psychologist's opinion that this court in *Ross* found to be one part of the evidence supporting the Governor's finding that Ross would pose a danger to public safety if released from prison. (*Ross, supra,* 170 Cal.App.4th at p. 1497.) Rather, it was a mental health evaluation in 2008 that indicated (1) Ross minimized the nature of the murder he committed (he denied an intent to rob the victim and claimed that the killing occurred only after the victim pointed a gun at Ross and threatened to kill him—a " 'version of events [that] does not entirely conform to [the] records' "); (2) Ross " 'does not appear to understand the underlying causes [of the murder] aside from the role of alcohol' " and " 'has limited insight into his personality dynamics and has not taken responsibility for all of his behaviors in the life crime' "; (3) Ross " 'has demonstrated a maladaptive pattern of alcohol use, leading to clinically significant impairment' " that, as had been noted by a probation officer, " 'turns Mr. Ross from a cooperative and reasonable individual into an emotional, volatile, irresponsible and exceedingly dangerous individual' "; (4) although he has participated in substance abuse treatment programs, Ross continued to " 'meet the criteria for Alcohol Dependence' " and was " 'unable to discuss the triggers and underlying causes to his drinking' "; (5) Ross " 'could not articulate a comprehensive and workable substance abuse relapse prevention plan that he intends to exercise in the community' " if released from prison; (6) Ross's " 'exposure to the destabilizing [e]ffects of alcohol and drugs will be increased in the community and will place him at a higher risk of recidivism,' " an issue he did not " 'appear [to have] factored . . . into his parole plans in a meaningful manner' "; (7) Ross " 'represents a *moderate-low* risk of violence' " only if he " 'remains abstinent from all alcohol and drugs in the community' "; and (8) Ross's " 'ability to refrain [from alcohol and drugs if released] is questionable given his lack of understanding and a concrete plan.' "

The Governor acknowledged "various positive factors" in terms of Ross's efforts to "enhance his ability to function within the law upon [his] release," including the successful completion of vocational courses and many self-help and therapy programs, and the "positive evaluations from mental-health and

---

[4] "Among his convictions in 11 criminal cases prior to the murder, [Ross] was found guilty of assault with a deadly weapon in 1975, battery in 1980, and a 1982 assault with an automobile." (*Ross, supra,* 170 Cal.App.4th at p. 1508.)

correctional professionals over the years." However, the Governor found that, despite the fact "Ross made some creditable gains in prison," the other factors summarized above demonstrated that Ross continued to pose an unreasonable risk to public safety if released from prison.

After the Governor reversed the Board's finding and instead found Ross to be unsuitable for parole, Ross filed a motion in this court, seeking "enforcement" of our decision in *Ross, supra*, 170 Cal.App.4th 1490. We denied the motion without prejudice to Ross filing a new petition for writ of habeas corpus.

Ross then filed the petition for writ of habeas corpus that is now before us.

## DISCUSSION

Ross contends that the Governor's 2009 decision to once again reverse the Board's 2006 parole suitability finding is "unlawful" because, by considering new evidence (the mental health evaluation in 2008), the Governor "arbitrarily disregarded" this court's directive in *Ross, supra*, 170 Cal.App.4th 1490, to reevaluate the matter based only on the evidence considered by the Board in 2006, and "arbitrarily disregarded California Constitution, article V, section 8(b)" and Penal Code section 3041.2, which, Ross claims, "contemplated gubernatorial review of the record that the Board reviewed when it made its parole decision."

Akin to his appellate advocacy in *Ross, supra*, 170 Cal.App.4th 1490, 1513–1514, Ross's counsel argues we should "[h]old the Governor in contempt of this Court" and "[i]mpose financial sanctions on the Governor" because, counsel asserts, the "Governor's repeated unlawfulness over the course of three years blocking Ross's release is intolerable" and shows the Governor is "biased" against Ross. Counsel even personally attacks the Attorney General by characterizing as "created from whole cloth" the Attorney General's argument in support of the Governor's decision. Claiming there is "no disinfectant" for the Governor's "unlawfulness," Ross's counsel asks us to not only hold the Governor in contempt and to impose sanctions, but also to "issue an order that provides for Ross's immediate release" rather than to remand the matter to the Governor for reconsideration based only on the evidence presented to the Board in 2006.[5]

---

[5] *In re Masoner* (2009) 179 Cal.App.4th 1531 [102 Cal.Rptr.3d 463] (hereafter *Masoner*) held that, when a court concludes there is no evidence to support the Governor's reversal of the Board's parole suitability finding, the remedy is to reinstate the Board's finding, rather than to remand the matter to the Governor for further reconsideration in accordance with due process of law. (*Id.* at p. 1541.) *Masoner* reasoned that (1) remanding the matter to the Governor would be "an idle act" because the Governor already had reviewed the

Simply put, the issue posed in this habeas corpus proceeding is whether our disposition in *Ross, supra,* 170 Cal.App.4th 1490, other decisional authority, and the applicable constitutional provision and statute allowed the Governor—in deciding whether to reverse the Board's parole decision in 2006—to consider only the evidence that was before the Board in 2006. Stated another way, the issue is whether the Governor erred in relying in part on the mental health evaluation of Ross in 2008.

Contrary to Ross's claim, our decision in *Ross* did not limit the Governor to considering on remand only the evidence before the Board in 2006. We did not explicitly do so; our disposition simply directed the Governor to conduct further proceedings consistent with the standards articulated in *Lawrence.* And our decision did not "implicitly" do so, as Ross argues. Indeed, we pointed out that the test to be applied is whether some evidence supports a finding of *current dangerousness* (*Ross, supra,* 170 Cal.App.4th at pp. 1497, 1504), i.e., whether, *at the time the parole decision is made,* the " 'inmate *continues* to pose an unreasonable risk to public safety [if released from prison].' " (*Id.* at p. 1505, original italics, quoting *Lawrence, supra,* 44 Cal.4th at p. 1221.) Consistent with this test, if for the proceeding on remand, the Board provides the Governor with new evidence (i.e., evidence unavailable when the parole decision was made but regarding which the prisoner has had an opportunity to respond (Pen. Code, § 3041.5, subd. (a)(1)) that the prisoner would pose an unreasonable risk to public safety if released, it must be considered by the Governor. This is so because "public safety is the overarching consideration for both the Board and the Governor [in determining whether a prisoner who is serving an indeterminate sentence should be released from prison]." (*Lawrence, supra,* 44 Cal.4th at p. 1209.)

Thus, prior decisions of this court granting petitions for writs of habeas corpus (because of the lack of some evidence to support a finding of unsuitable for parole) have remanded the matters to the Board for new hearings, with directions to "find [the prisoner] suitable for parole, unless *new*

materials provided by the Board and the court had concluded the materials contain no evidence to support a finding of unsuitability for parole (*id.* at p. 1538), and (2) remanding to the Governor would render the writ of habeas corpus "meaningless" because it "would entitle the Governor to repeatedly 'reconsider' the release of the prisoner no matter how many times the courts found that there was no evidence that the prisoner was currently dangerous" (*id.* at p. 1540). The latter rationale ignores the presumption that the Governor will properly perform his official duty (Evid. Code, § 664); and *Masoner* does not consider the power of a court in a habeas corpus proceeding to take evidence as to whether a Governor has acted with the intent to thwart a prisoner's right to due process and, if so, to fashion a remedy granting the prisoner relief. The first rationale does not apply here because (1) in *Ross, supra,* 170 Cal.App.4th 1490, we concluded there *was* some evidence to support the Governor's finding, and (2) in the petition now before us, Ross does not claim there is a lack of any evidence that he is unsuitable for parole.

*evidence* of his conduct and/or change in mental state *subsequent to* [the hearing when parole was denied] is introduced and is sufficient to support a finding that he currently poses an unreasonable risk of danger to society if released on parole." (*In re Palermo* (2009) 171 Cal.App.4th 1096, 1112–1113 [90 Cal.Rptr.3d 101]; *In re Singler* (2008) 169 Cal.App.4th 1227, 1245 [87 Cal.Rptr.3d 319].)

■ Likewise, decisional authority of the California Supreme Court, and the applicable constitutional provision and statute, do not limit the Governor to consider *on remand* just the evidence before the Board in 2006. *Rosenkrantz* states only that the Governor must " 'review materials provided by the parole authority' " (quoting Pen. Code, § 3041.2, subd. (a)) and " 'affirm, modify, or reverse the decision of the parole authority *on the basis of the same factors which the parole authority is required to consider*' " (quoting Cal. Const., art. V, § 8, subd. (b)). (*Rosenkrantz, supra*, 29 Cal.4th at p. 660; see also *Lawrence, supra*, 44 Cal.4th at pp. 1204, 1210; *In re Shaputis* (2008) 44 Cal.4th 1241, 1258 [82 Cal.Rptr.3d 213, 190 P.3d 573].) *Rosenkrantz* did state that, in reviewing the Governor's decision to affirm, modify, or reverse the Board's parole decision, a court must determine whether the factual basis for the Governor's decision "is supported by some evidence in the record that *was before the Board.*" (*Rosenkrantz, supra*, 29 Cal.4th at p. 667, italics added.) ■ However, "[l]anguage used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered." (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689]; see *Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 127 [92 Cal.Rptr.3d 595, 205 P.3d 1047] [" ' "cases are not authority for propositions not considered" ' "].) *Rosenkrantz* was the review of a Governor's parole suitability finding made during the 30 days following the Board's parole decision (Pen. Code, § 3041.2, subd. (a)). Here, in contrast, long after the Board found in 2006 that Ross was suitable for parole, the Governor was directed by this court to reconsider his decision reversing the Board's finding. For such a review on remand, use of the "some evidence in the record that was before the Board" language of *Rosenkrantz* would defeat the duty of the Governor to apply the *current dangerousness* standard. Besides, the evidence "before the Board" language in *Rosenkrantz* does not mirror the statutory language saying the Governor "shall review materials *provided by* the parole authority." (Pen. Code, § 3041.2, subd. (a), italics added.)

To the extent some Court of Appeal decisions can be read to say the Governor's review of the Board's parole suitability decision must be based only on evidence presented to the Board at the time of its decision (e.g., *In re Smith* (2003) 114 Cal.App.4th 343, 374 [7 Cal.Rptr.3d 655]), they involved a Governor's parole finding made during the 30 days following the Board's decision, rather than a Governor's finding long thereafter in response to a

court's direction to reconsider the matter. Thus, they are inapposite to Ross's situation for the reasons stated above.

Ross does not dispute that the Board provided the Governor with the 2008 mental health evaluation for the Governor to use in making his parole suitability finding in 2009. Ross also does not dispute that the 2008 mental health evaluation was new evidence that became available after the Board's decision in 2006 finding him suitable for parole, and that this new evidence was relevant to the Governor's determination whether, on April 9, 2009, Ross continued to pose an unreasonable risk to public safety if released from prison on parole. And Ross "admits that he had an opportunity to review and comment to the Board" regarding the 2008 mental health evaluation, which was part of the record presented to the Board at a parole suitability hearing in 2008. (See Pen. Code, § 3041.5, subd. (a)(1).)

Accordingly, when on April 9, 2009, the Governor found that Ross was unsuitable for parole, the Governor properly considered the 2008 mental health evaluation because (1) it was new evidence provided to the Governor by the Board (Pen. Code, § 3041.2, subd. (a)) for him to make a new parole suitability determination consistent with standards articulated in *Lawrence, supra,* 44 Cal.4th 1181, as ordered by this court, and (2) it was relevant to the "same factors which the parole authority is required to consider" (Cal. Const., art. V, § 8, subd. (b)) in deciding whether Ross continued to pose an unreasonable risk to public safety if released from prison.[6]

Ross does not contend the record considered by the Governor, including the mental state evaluation in 2008, lacks some evidence of dangerousness in April 2009, when the Governor found Ross was unsuitable for parole. Therefore, we deny his request for an order directing his "immediate release on parole" and reject his counsel's frivolous demands for orders holding the Governor in "contempt of this Court," and imposing "financial sanctions on the Governor."

---

[6] In Ross's view, the new evidence should not have been considered by the Governor on remand because, in the words of Ross's counsel, "there were other procedures in place to deal with any post-2006 grant information on Ross that might have indicated he was not suitable for parole." He refers to Penal Code sections 3041.1, 3041.5, 3041.7, 3060, 3062, and 3063. However, section 3041.1 is not an alternate procedure for the consideration of new evidence of a prisoner's current dangerousness; it simply authorizes the Governor to request review of a Board's decision granting or denying parole—authority the Governor already invoked in this case. Sections 3041.5 and 3041.7 govern the Board's hearing to set, postpone, or rescind a parole date; they do not apply to the Governor's review of the Board's decision. Also inapplicable are sections 3060, 3062, and 3063, which govern the suspension or revocation of parole when a prisoner has already been released from prison.

## DISPOSITION

The petition for writ of habeas corpus is denied.

Nicholson, J., and Robie, J., concurred.

A petition for a rehearing was denied July 1, 2010, and the opinion was modified to read as printed above. Petitioner's petition for review by the Supreme Court was denied September 29, 2010, S184491.