[No. C063289. Third Dist. June 8, 2011.]

In re RANDY COPLEY on Habeas Corpus.

## Counsel

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Julie L. Garland, Assistant Attorney General, Anya M. Binsacca, Jessica N. Blonien and Krista L. Pollard, Deputy Attorneys General, for Appellant The People.

Brandie Grover Devall for Respondent Randy Copley.

## Opinion

**RAYE, P. J.**—Appellant, the warden of Deuel Vocational Institution (the Warden), appeals from the remedy ordered by the trial court in its order granting respondent Randy Copley's petition for a writ of habeas corpus. The trial court found Governor Schwarzenegger's November 2008 decision was not supported by " 'some evidence,' " failed to contain clear citation to the

evidence relied upon, and failed to articulate a " 'rational nexus' " between the evidence in the record and the Governor's determination that Copley is unsuitable for parole. Accordingly, the trial court vacated the Governor's reversal of the Board of Parole Hearings's (the Board) June 2008 parole grant and reinstated the June 19, 2008, finding of the Board that Copley was suitable for parole. In June 2009, during the pendency of this appeal, the Board held another parole hearing.[1] Relying largely on the Governor's reversal of the 2008 parole grant, the Board found Copley was unsuitable for parole. At no time has the Warden challenged the merits of the decision finding the Governor's reversal unsupported by some evidence. Rather, the Warden only seeks modification of the remedy. We shall affirm the trial court's order and remedy.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 1991 Copley and his friend "Crotty" agreed to rob an intoxicated man they had met at a billiard parlor. During the course of the robbery, Crotty beat and stabbed the man, killing him. Pursuant to a negotiated plea, Copley pled guilty to second degree murder and was sentenced to an indeterminate term of 15 years to life in state prison. This term began on September 29, 1992.

On June 19, 2008, the Board conducted a parole consideration hearing and found Copley suitable for parole. On November 5, 2008, the Governor reversed the Board's decision.

Copley filed a petition for a writ of habeas corpus in the trial court, challenging the Governor's decision. Copley alleged the Governor's decision violated his due process rights because it was not supported by some evidence that he posed a current danger to society and was based on the immutable facts of his offense.

On September 8, 2009, the trial court granted Copley's petition for a writ of habeas corpus. The court found the Governor's decision that Copley posed "an unreasonable risk of danger to society if released is not supported by 'some evidence' in the record." The court further found the Governor's decision did not contain "clear citation to the evidence relied upon for the reversal, or an express articulation of a 'rational nexus' between that evidence in the record and his determination that [Copley] is unsuitable for parole." Accordingly, the court granted Copley's petition for a writ of habeas corpus, reversed and vacated the Governor's decision reversing the grant of the Board, and reinstated the June 19, 2008, finding of the Board that Copley was suitable for parole.

---

[1] The Warden's request for judicial notice of the June 18, 2009, parole hearing is granted.

Meanwhile, in June 2009 the Board conducted another parole consideration hearing. In the year between hearings, no new psychological evaluation was performed. Copley had remained discipline free, paid off his restitution, and had continued to participate in Narcotics Anonymous and group therapy. The only new evidence presented to the Board was letters of support from family members and prospective employers, and laudatory chronological reports. At the 2009 hearing, the Board questioned Copley about the Governor's reversal, specifically, the Governor's finding that Copley lacked insight into the commitment offense and his substance abuse. The Board agreed Copley lacked insight, "as evidenced by [his] inability to adequately respond to the governor's concern" about that lack of insight regarding the commitment offense. Accordingly, the Board found Copley was not suitable for parole.

At oral argument, the Attorney General informed this court of the 2009 parole hearing. We requested supplemental briefing on what effect, if any, the 2009 hearing and decision to deny parole should have on this court's disposition of the current appeal. In his briefing, the Warden acknowledges that if "the Court vacates the Governor's decision reversing the Board's 2008 decision, the Board would not have had the authority to consider Copley's suitability for parole in 2009." The Warden then reiterates the argument that the correct remedy in this case is to remand the matter to the Governor's office for reconsideration rather than reinstating the 2008 Board decision.

## DISCUSSION

### I

The Warden does not challenge the reversal of the Governor's decision or the finding that the decision was not supported by some evidence. The Warden challenges only the remedy ordered by the trial court, claiming that the proper remedy "is an order for the parole authority to vacate its decision and to proceed in accordance with due process. In addition, [the Warden argues] the separation-of-powers doctrine prohibits one branch of government from assuming the role or responsibilities of another. And, determining whether an inmate is suitable for parole is an exclusively executive function." Accordingly, the Warden contends this court should remand the matter back to the Governor for reconsideration in light of the court's opinion. We disagree.

Contrary to the Warden's claim, the trial court's order reinstating the Board's June 19, 2008, finding was the proper remedy. The Warden has cited no authority requiring remand to the Governor after a court has found there is not "some evidence" to support his decision reversing the Board's parole grant. In fact, the Warden has acknowledged the weight of authority is to the

contrary. Indeed, the Supreme Court has affirmed a similar judgment that afforded the remedy of reinstating the Board's parole release order. (*In re Lawrence* (2008) 44 Cal.4th 1181, 1190, 1201, 1229 [82 Cal.Rptr.3d 169, 190 P.3d 535] (*Lawrence*).) The weight of authority on this point continues to convince us that the trial court ordered the appropriate remedy in reinstating the Board's decision. (See *In re Burdan* (2008) 169 Cal.App.4th 18, 39 [86 Cal.Rptr.3d 549] (*Burdan*); *In re Moses* (2010) 182 Cal.App.4th 1279, 1314 [106 Cal.Rptr.3d 608] (*Moses*); *In re Masoner* (2009) 179 Cal.App.4th 1531, 1540 [102 Cal.Rptr.3d 463] (*Masoner*); *In re Dannenberg* (2009) 173 Cal.App.4th 237, 257 [92 Cal.Rptr.3d 647] (*Dannenberg*); *In re Vasquez* (2009) 170 Cal.App.4th 370, 387 [87 Cal.Rptr.3d 853] (*Vasquez*).)

The Warden rests his argument that the proper remedy is to remand the matter to the Governor for reconsideration on the premise that the traditional remedy when a due process violation is found is to provide the process due. The Warden relies on *In re Rosenkrantz* (2002) 29 Cal.4th 616 [128 Cal.Rptr.2d 104, 59 P.3d 174] (*Rosenkrantz*), in which the California Supreme Court held "the judicial branch is authorized to review the factual basis of a decision of the Board denying parole in order to ensure that the decision comports with the requirements of due process of law . . . ." (*Id.* at p. 658.) *Rosenkrantz* also indicated that the appropriate remedy when the decision of the Board is not supported by some evidence is to order the Board to vacate its decision denying parole and proceed in accordance with due process of law. (*Ibid.*) However, in *Rosenkrantz*, the court did not reach the question of the appropriate remedy upon finding that the *Governor's* decision is unsupported by some evidence, nor did the courts in other cases upon which the Warden relies. (See *In re Carr* (1995) 38 Cal.App.4th 209, 218 [45 Cal.Rptr.2d 34] [even if decision not to hold annual parole discharge review violated due process, remedy would be to provide annual hearing, not nullification of parole revocation decision]; *In re Love* (1974) 11 Cal.3d 179 [113 Cal.Rptr. 89, 520 P.2d 713] [failure to provide inmate with a confidential report before his parole revocation hearing violated due process; remedy was to provide the report and a new revocation hearing]; *In re Castaneda* (1973) 34 Cal.App.3d 825 [110 Cal.Rptr. 385] [failure to hold prerevocation hearing violated due process; remedy was to order Board to vacate parole revocation decision and conduct the prerevocation hearing].)

After briefing was completed in this case, the California Supreme Court issued *In re Prather* (2010) 50 Cal.4th 238 [112 Cal.Rptr.3d 291, 234 P.3d 541] (*Prather*), in which it conclusively resolved the issue of the appropriate remedy when a reviewing court concludes a decision by the Board to deny parole is not supported by "some evidence." In *Prather*, the Supreme Court concluded "that a decision granting habeas corpus relief in these circumstances generally should direct the Board to conduct a new parole-suitability hearing in accordance with due process of law and consistent with the

decision of the court, and should not place improper limitations on the type of evidence the Board is statutorily obligated to consider." (*Id.* at p. 244.) *Prather* did not consider the appropriate remedy when it is the Governor's decision that is not supported by "some evidence" rather than the Board's, although the court noted the distinction between the two situations. (*Id.* at p. 243.) As the Warden would have it, there should be no difference in remedy whether it is a Board decision or a gubernatorial decision that is vacated.

That the remedy cannot be the same in both circumstances is rooted in the fundamentally different roles and authority of the Board and the Governor in parole decisions. "[T]he statutes and governing regulations establish that the decision to grant or deny parole is committed entirely to the judgment and discretion of the Board, with a constitutionally based veto power over the Board's decision vested in the Governor." (*Prather, supra*, 50 Cal.4th at p. 251.)

The Board holds the hearing where evidence is presented regarding the inmate's suitability for parole. (Pen. Code, § 3041 et seq.)[2] If a court vacates a decision of the Board and remands the matter to the Board, the Board can give the inmate a new hearing at which it considers the full record, including additional available evidence, to decide the inmate's current suitability for parole. (*Prather, supra*, 50 Cal.4th at pp. 244, 253, 257–258; Pen. Code, § 3042; Cal. Code Regs., tit. 15, § 2402, subd. (b).)

By contrast, the Governor's constitutional authority is limited to a review of the materials presented by the Board. (Cal. Const., art. V, § 8, subd. (b); see also Pen. Code, § 3041.2, subd. (a).) Furthermore, the Governor's review of the Board's decision is "limited to a consideration of the record before the hearing panel." (*In re Arafiles* (1992) 6 Cal.App.4th 1467, 1477, 1478 [8 Cal.Rptr.2d 492] (*Arafiles*);[3] see also *Rosenkrantz, supra*, 29 Cal.4th at pp. 660–661; *In re Smith* (2003) 109 Cal.App.4th 489, 507 [134 Cal.Rptr.2d 781].)

Our recent decision in *In re Ross* (2010) 185 Cal.App.4th 636 [110 Cal.Rptr.3d 811] (*Ross*) does not compel a different interpretation of the

---

[2] Further undesignated statutory references are to the Penal Code.

[3] As stated by Justice Puglia in analyzing the limitation on the record which can be considered by the Governor, "Although neither [California Constitution, article V,] section 8[, subdivision] (b) nor Penal Code section 3041.2 expressly states the Governor's review is limited to a consideration of the record before the hearing panel, such a limitation is implicitly conveyed by the common meaning of the term 'review,' particularly when that term is used as here, in juxtaposition to an express reference in the statute to materials provided for the Governor's review by the parole authority. In its usual construction, ' "review indicates simply a re-examination of proceedings already had" without the taking of any new evidence' [citation]; i.e., an examination of the same record by a different tribunal. [Citations.]" (*Arafiles, supra*, 6 Cal.App.4th at p: 1477.)

evidence the Governor would be permitted to consider in this case. In *In re Ross* (2009) 170 Cal.App.4th 1490 [88 Cal.Rptr.3d 873] (*Ross I*), after reviewing the record we expressly found there was evidence supporting the Governor's decision and that the Governor had properly considered all the factors he was required to consider. (*Ross I, supra,* 170 Cal.App.4th at pp. 1497, 1510, 1512.) However, after the Governor's decision, the Supreme Court decided *Lawrence,* requiring the Governor to more explicitly articulate findings and the connection between those findings and the prisoner's current dangerousness. (*Ross I, supra,* 170 Cal.App.4th at pp. 1497–1498.) We recognized it was inappropriate for us to "salvage" the Governor's decision, despite the existence of evidence supporting it, and thus were compelled to remand the parole determination to the Governor for further proceedings consistent with the requirements of *Lawrence.*

Before the Governor's reconsideration, the Board conducted another parole consideration hearing in 2008. (*Ross, supra,* 185 Cal.App.4th at p. 647.) During that hearing, the Board considered a 2008 mental health evaluation which indicated that Ross still " 'pose[d] a risk of recidivism and violence, and that his release from prison at this time would pose an unreasonable risk to public safety.' " (*Id.* at p. 640.) Ross had an opportunity to review and comment on the mental health evaluation as part of the 2008 hearing. The Board also provided the Governor with the 2008 mental health evaluation for his reconsideration of the 2006 parole decision. On remand, in 2009 the Governor again reversed the Board's 2006 decision. (*Ibid.*) In the specific circumstances of *Ross,* we found the Governor properly considered the 2008 mental health evaluation. But the holding in *Ross* is limited: the Governor may consider new evidence on remand where the Board has provided the Governor with evidence that was unavailable when the original parole decision was made, that evidence supports the conclusion the prisoner would pose an unreasonable risk to public safety if released, and the prisoner has had an opportunity to respond to that evidence. (*Id.* at p. 645.)

In this case, the Warden has not explained and we cannot discern what purpose a remand to the Governor would serve. The Warden has not identified any new evidence bearing on defendant's current dangerousness that was not previously available, that the Governor has not considered, or that was not reflected in the Governor's decision. Remand to the Governor would simply allow the Governor another review of the same materials already provided by the Board and reviewed by him. The Warden has not challenged the finding that the Governor's decision was not supported by some evidence. Further consideration by the Governor of the same evidence already considered will not change this fact. "[N]either the Governor, nor the Board, has the authority to ' "disregard a judicial determination regarding the sufficiency of the evidence [of current dangerousness] and to simply repeat the same decision on the same record." ' [Citation.]" (*In re McDonald* (2010)

189 Cal.App.4th 1008, 1024 [118 Cal.Rptr.3d 145] (*McDonald*).) Thus, in this case, "[r]emanding the matter to the Governor would be an idle act because the Governor has already reviewed the materials provided by the Board and, according to the superior court's unchallenged order, erroneously concluded that there was some evidence in those materials to support a reversal of the Board's decision. [Citations.]" (*Masoner, supra,* 179 Cal.App.4th at p. 1538.)

■ "[A] petitioner is entitled to a constitutionally adequate and meaningful review of a parole decision, because an inmate's due process right 'cannot exist in any practical sense without a remedy against its abrogation.' " (*Prather, supra,* 50 Cal.4th at p. 251; see also *Rosenkrantz, supra,* 29 Cal.4th at p. 664; *Lawrence, supra,* 44 Cal.4th at p. 1213.) "[T]o 'proceed in accordance with due process of law' does not mean . . . the Governor . . . is to be given an opportunity to reconsider the parole decision. Rather, where, as here, it is determined there is not 'some evidence' in the record to support the Governor's decision to overrule the Board's grant of parole, the proper remedy is to vacate the Governor's decision and to reinstate that of the Board. (See *Lawrence, supra,* 44 Cal.4th at pp. 1190, 1229 [affirming a Court of Appeal decision to vacate the Governor's denial of parole and reinstate the Board's grant of parole].)" (*Burdan, supra,* 169 Cal.App.4th at p. 39; see also *Moses, supra,* 182 Cal.App.4th at p. 1314; *Masoner, supra,* 179 Cal.App.4th at p. 1540; *Dannenberg, supra,* 173 Cal.App.4th at p. 257; *Vasquez, supra,* 170 Cal.App.4th at p. 387.) Accordingly, the trial court issued the proper remedy.

As noted by Copley in his supplemental brief, and conceded by the Warden, our finding that the trial court issued a proper remedy by vacating the Governor's decision and reinstating the Board's 2008 decision finding Copley suitable for parole also vacates the Board's 2009 decision, as that was a hearing the Board had no authority to conduct.

## II

The Warden also contends "remanding the matter back to the Governor respects the separation of powers." We reject the implicit contention that a failure to remand would violate the separation of powers.

■ Article III, section 3 of the California Constitution provides that the powers of state government are divided into the legislative, executive, and judicial branches, and persons charged with the exercise of one power may not exercise either of the others, except as permitted by the state Constitution. (*Rosenkrantz, supra,* 29 Cal.4th at p. 662.)

■ There is no question that "[t]he executive branch has 'inherent and primary authority' over parole matters. [Citation.] Within that branch, the

Board is an 'executive parole agency' that is an 'arm of the Department of Corrections.' " (*In re Roberts* (2005) 36 Cal.4th 575, 588 [31 Cal.Rptr.3d 458, 115 P.3d 1121].) "By its nature, the determination whether a prisoner should be released on parole is generally regarded as an executive branch decision. [Citations.] The decision, and the discretion implicit in it, are expressly committed to the executive branch. [Citations.] It is not a judicial decision." (*In re Morrall* (2002) 102 Cal.App.4th 280, 287 [125 Cal.Rptr.2d 391].)

█ As an arm of the executive branch, the Board exercised its discretion in 2008 and determined Copley to be suitable for release. In the absence of some evidence that Copley posed a current threat to public safety, the Governor did not have the discretion to reverse that determination and deny Copley release. (See *Lawrence, supra*, 44 Cal.4th at p. 1204; *Rosenkrantz, supra*, 29 Cal.4th at pp. 663–664.) Judicial review of the Governor's parole decisions under the "some evidence" standard does not violate the separation of powers doctrine. (*Rosenkrantz, supra*, 29 Cal.4th at p. 667.)

Meaningful judicial review of the Governor's parole decision necessarily includes the power to fashion a remedy for the aggrieved party. Though we decline to remand the matter to the Governor, the remedy provided here "does not usurp the inherent and primary authority of the executive branch over parole matters, does not materially impair such authority, and does not control a Governor's exercise of discretion." (*Rosenkrantz, supra*, 29 Cal.4th at p. 667.) In reinstating the 2008 order of the Board, it remains the executive branch, not the judicial, which has exercised its discretion to determine Copley's suitability for parole. By reinstating "an earlier executive branch decision—made by the Board—overturning only the 'veto' of that decision by the Governor[,] . . . [t]he power of the executive branch is, in this instance, not infringed, but respected." (*McDonald, supra*, 189 Cal.App.4th at p. 1024, citation omitted.) Thus, there is no violation of the separation of powers.

## III

█ Lastly, our decision affirming the trial court's order reinstating the Board's parole decision does not guarantee Copley's immediate release. The information available to the Board and the Governor regarding Copley's current suitability for parole is not static. Facts and circumstances may have changed and the parole authorities can react to changes in Copley's status or additional evidence indicating he would currently be a danger to the public if released. For example, "[u]nder Penal Code section 3041.1, the Governor has authority, up to 90 days prior to a scheduled parole release date, to request the full Board to grant in bank review of a panel's parole decision, and must state the reason or reasons for the request, indicating 'whether the request is

based on a public safety concern, a concern that the gravity of current or past convicted offenses may have been given inadequate consideration, or on other factors.' " (*Rosenkrantz, supra*, 29 Cal.4th at p. 659, fn. 13.) The Board itself is also empowered to rescind a parole date for good cause, such as where the prisoner has engaged in disciplinary misconduct subsequent to the parole grant; the prisoner's mental state has deteriorated; fundamental errors occurred, resulting in the improvident granting of a parole date; or any new information indicating that parole should not occur. (Pen. Code, §§ 3041.5, 3041.7; Cal. Code Regs., tit. 15, § 2451; *In re Powell* (1988) 45 Cal.3d 894, 901–902 [248 Cal.Rptr. 431, 755 P.2d 881].) "Finally, after a prisoner has been released on parole, both the Board and the Governor have the power to suspend or revoke parole for cause. (Pen. Code, §§ 3060, 3062, 3063.)" (*Rosenkrantz, supra*, 29 Cal.4th at p. 659, fn. 13.)

Since Copley remains in custody, we will "direct the Board to proceed in accordance with its usual procedures for release of an inmate on parole unless within 30 days of the finality of this decision the Board determines in good faith that cause for rescission of parole may exist and initiates appropriate proceedings to determine that question. [Citations.]" (*In re Twinn* (2010) 190 Cal.App.4th 447, 474 [118 Cal.Rptr.3d 399].)

## DISPOSITION

The order of the trial court dated September 8, 2009, granting Copley's petition for a writ of habeas corpus, reinstating the Board's June 2008 decision, and vacating the Governor's reversal of that decision is affirmed. The Board's June 18, 2009, decision is vacated. Upon finality of this decision, the stay previously issued is vacated.

Hull, J., and Robie, J., concurred.