Filed 4/13/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re GILBERT TREJO,<br><br>      on Habeas Corpus. | A149064<br><br>(Marin County<br>Super. Ct. No. SC197534A) |

      This case presents the question whether a "youth offender" sentenced to a term of 15 years to life for an offense committed when he was 17 years old and found suitable for release on parole pursuant to the youth offender parole provisions of Penal Code section 3051 must, before being released, serve a consecutive sentence imposed for a crime committed in prison at age 20.  We conclude that the decision of the Board of Parole Hearings requiring petitioner to serve the consecutive term after being granted parole, and its implementation by the Department of Corrections and Rehabilitation, were erroneous.

**STATEMENT OF THE CASE**

      In 1980, petitioner was convicted of second degree murder (Pen. Code, § 187)[1] and sentenced to a prison term of 15 years to life.  The offense was committed in 1979, when petitioner was 17 years of age. In 1982, at age 20, while incarcerated at San Quentin State Prison, he pled guilty to assault with a deadly weapon on a peace officer (§ 245) and possession of a deadly weapon by a prisoner (§ 4502).  He was sentenced to the aggravated term of four years on the possession count, to be served consecutively to his life sentence; execution of a five-year sentence was stayed on the assault count.

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

On June 5, 2015, after serving 35 years in prison, petitioner was found suitable for parole as a youthful offender under section 3051. The Board of Parole Hearings (Board) panel noted that he was eligible for parole subject to review by the Board and the Governor, and that he was still required to serve his "*In re Thompson* term"[2]—the consecutive four-year term for the 1982 in-prison offense.

The decision to grant petitioner parole became effective on November 2, 2015. His earliest possible release date was calculated to be November 2, 2018. Petitioner represents that his release date has since been recalculated as November 2, 2017, based on a correction in his credit earning status.

On June 6, 2016, petitioner filed a petition for writ of habeas corpus in the Marin County Superior Court challenging the legality of his incarceration beyond November 2, 2015. Petitioner argued that the Department of Corrections and Rehabilitation (Department) was required by section 3046, subdivision (c), and section 3051 to release him on November 2, 2015, upon the conclusion of his indeterminate sentence, and to reduce his parole period by the amount of time he has served since November 2, 2015.

The trial court denied the petition on July 27, 2016, concluding that section 3051 does not exempt a youthful offender granted parole from serving a consecutive sentence for an offense committed in prison as required by section 1170.1, subdivision (c), which provides that a consecutive sentence for an in-prison offense "shall commence from the time the person would otherwise have been released from prison."

Petitioner filed his petition for writ of habeas corpus in this court on August 18, 2016, alleging that section 1170.1, subdivision (c), does not apply to the present case because, since his in-prison offense was committed before he was 23 years old, he was entitled to release at the end of his indeterminate sentence pursuant to section 3051, subdivision (d).

---

[2] *In re Thompson* (1985) 172 Cal.App.3d 256.

DISCUSSION

As a preliminary matter, respondent argues that we should not reach the merits of petitioner's claim because he failed to exhaust his administrative remedies with the Department with regard to calculation of his release date. (Cal. Code Regs., tit. 15, § 3084.1, subd. (a) ["administrative mechanism for review of departmental policies, decisions, actions, conditions, or omissions"].) Petitioner maintains no exhaustion was required because the decision to require him to serve the consecutive term was made by the Board, not the Department. The record supports petitioner, inasmuch as the commissioner, in stating the Board's decision finding petitioner suitable for parole, stated that petitioner would be required to serve the consecutive term. So does the law: "The applicable statutes provide that the Board is the administrative agency within the executive branch that generally is authorized to grant parole and set release dates. (§§ 3040, 5075 et seq.)" (*In re Lawrence* (2008) 44 Cal.4th 1181, 1201 (*Lawrence*).) At the time of the Board's hearing in this case, section 3041, subdivision (a), provided, "One year prior to the inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall again meet with the inmate and shall normally *set a parole release date* as provided in Section 3041.5" and sets forth the manner in which the release date was to be determined. (Stats. 2013, ch. 312 (Sen. Bill No. 260), § 2, italics added.) Section 3041, subdivision (b), provided, "The panel or the board, sitting en banc, shall *set a release date* unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." (Stats. 2013, ch. 312 (Sen. Bill No. 260), § 2, italics added.)

Respondent asserts, without explanation, that "the Board no longer sets release dates, including for non-parole eligible sentences." The authorities cited for this assertion are sections 3041, 3046, subdivision (c), 3051, and 4801, subdivision (c), as amended in

2013 and 2015.  We fail to see how these statutes effect the change respondent attributes to them.

The only express references to release dates in these statutes are in sections 3041 and 3046.  Section 3046 continues to refer to the Board setting "release dates," providing that an inmate found suitable for parole under section 3051 "shall be paroled regardless of the manner in which the board set release dates pursuant to subdivision (a) of Section 3041."  Section 3041 was amended in 2015, effective January 1, 2016—after petitioner's hearing before the Board in June 2015—to refer to granting parole rather than setting a parole release date.  (Stats. 2015, ch. 470 (Sen. Bill No. 230), § 1 ["shall normally grant parole as provided in Section 3041.5" (subd. (a)(2)); "The panel or the board, sitting en banc, shall grant parole to an inmate . . ." (subd. (b)(1))].)  This amendment deleted the provisions of the former subdivision (a) of section describing the manner in which the Board was to determine the release date and added a new subdivision (a)(4):  "Upon a grant of parole, the inmate shall be released subject to all applicable review periods.  However, an inmate shall not be released before reaching his or her minimum eligible parole date as set pursuant to Section 3046 unless the inmate is eligible for earlier release pursuant to his or her youth offender parole eligibility date."  (Stats. 2015, ch. 470 (Sen. Bill No. 230), § 1.)

We do not read these changes as altering the Board's authority to set release dates for several reasons.  Section 3041 is still entitled, "Parole release date; setting; criteria; en banc review by the board."  The previous language of section 3041, referring to setting a release date, has been treated by the courts as meaning granting parole.  For example, *Lawrence, supra,* 44 Cal.4th at page 1204, quoting *In re Rosenkrantz* (2002) 29 Cal.4th 616, 654, both cases having been decided when the statute referred to "release date" rather than, as now, "parole," described section 3041, subdivision (b), as follows: " '[T]he governing statute provides that the Board must *grant parole* unless it determines that public safety requires a lengthier period of incarceration for the individual because of the gravity of the offense underlying the conviction.  (Pen. Code, § 3041, subd. (b).)  And as set forth in the governing regulations, the Board must set a *parole date* for a prisoner

4

unless it finds, in the exercise of its judgment after considering the circumstances enumerated in section 2402 of the regulations, that the prisoner is unsuitable for parole. Accordingly, parole applicants in this state have an expectation that they will be granted parole unless the Board finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and by regulation." (*Lawrence*, at p. 1204, italics altered from original.) According to the author of Senate Bill No. 230, by which section 3041 was amended in 2015, the purpose of the amendment was to ensure that inmates the Board found suitable for release on parole were in fact released expeditiously and not kept in confinement due to additional sentence enhancements. (Stats. 2015, Sen. Bill No. 230, Com. Report July 8, 2015; Stats. 2015, Sen. Bill No. 230, Com. Report Aug. 31, 2015.)[3] Nothing in the text or legislative history indicates the Legislature intended to alter the body responsible for determining an inmate's release date.

Respondent does not suggest petitioner was required to exhaust administrative remedies before challenging a decision made by the Board; its position is based on its view that the decision at issue was made by the Department. Furthermore, even if we

---

[3] According to the author, under then-existing law, "Even after the parole board finds an individual suitable for release they may still require an individual to spend months or even years in prison before being released. These lengthened sentences result from the term calculation process the parole board engages in to determine how many years an individual should spend in prison to satisfy the non-rehabilitative purposes of incarceration. These term calculations can extend or alter an individual's sentence, creating a system of back-end sentencing in which a judge's sentence may bear little resemblance to the actual time an individual serves under correctional control." (Stats. 2015, Sen. Bill No. 230, Com. Report July 8, 2015.)

"This bill provides that if an inmate is found suitable he or she shall be released, after the Governor's statutory right of review. The author believes that this is a truth in sentencing provision. If a person serves his or her time as imposed by the sentencing court and is found suitable, he or she is released. This will also give the inmate a realistic timeframe to work toward rehabilitating himself or herself. The author believes that to be found suitable by the Board and then kept longer because of factors in your original crime, that were already considered by the Board, does not encourage rehabilitative behavior by inmates." (Stats. 2015, Sen. Bill No. 230, Com. Report Aug. 31, 2015.)

were to view the decision as having been made by the Department, insistence upon exhaustion of administrative remedies would have been futile, as it appears both the Board and the Department were following an established policy in requiring petitioner to serve the consecutive term after being found suitable for release on parole. (See *In re Dexter* (1979) 25 Cal.3d 921, 925-926.) Respondent's invocation of the Department's "special expertise" in calculating release dates as a basis for applying the exhaustion doctrine has no relevance here, as no calculation is at issue—the only question is whether both the Board and the Department correctly interpreted the statutes upon which they based the policy of requiring service of a sentence imposed under section 1170.1, subdivision (c), before releasing a youth offender found suitable for parole release under section 3051. This is a purely legal issue. Declining to review the merits of petitioner's claim now could only delay the relief to which he is entitled.[4]

Respondent also contends this case should be transferred to the Fourth Appellate District, where the prison in which petitioner is confined is located, because prison staff calculated petitioner's release date and would be responsible for responding to an inmate appeal or updating the currently set release date. "[G]enerally speaking a petition for writ of habeas corpus should not be transferred to another court unless a substantial reason exists for such transfer. In general, a habeas corpus petition should be heard and resolved by the court in which the petition is filed." (*In re Roberts* (2005) 36 Cal.4th 575, 585 (*Roberts*).) *Griggs v. Superior Court* (1976) 16 Cal.3d 341, 347, established that " '[i]f the challenge is to *a particular judgment or sentence,* the petition should be transferred to the court which rendered judgment' " while " '[i]f the challenge is to *conditions of the inmate's confinement,* then the petition should be transferred to the superior court of the county wherein the inmate is confined.' " (*Roberts,* at pp. 583-584.) Analogizing to these categories, *Roberts* held that "a petitioner who seeks to challenge by means of habeas corpus the denial of parole (or his or her suitability for parole) should file the

---

[4] Petitioner represents that respondent raised the exhaustion argument in the superior court habeas proceeding, and that the superior court implicitly rejected the argument by reaching a decision on the merits of the petition.

petition in the superior court located in the county in which the conviction and sentence arose, and that the petition should be adjudicated in that venue." (*Id.* at p. 593.) Among other reasons for this procedural rule, the court explained that the "objectives of sentencing and parole are related" and that adjudicating petitions challenging adverse parole determinations in the court in the county of commitment would produce more consistent review, since prisoners are often transferred from one prison to another, and would more evenly distribute the workload of such petitions among the courts of the state. (*Id.* at pp. 590-593.)

The Board's decision in the present case is an "adverse parole determination" (*Roberts, supra,* 36 Cal.4th at p. 591) analogous to a denial of parole because petitioner is challenging the aspect of the Board's decision that prevented him from being released upon being found suitable for parole. Accordingly, venue in this court is proper.

## II.

In a series of cases, the United States Supreme Court has recognized that "children are constitutionally different from adults for purposes of sentencing" because, due to their "diminished culpability and greater prospects for reform, . . . 'they are less deserving of the most severe punishments.' " (*Miller v. Alabama* (2012) 567 U.S. ___, ___ [132 S.Ct. 2455, 2464] (*Miller*), quoting *Graham v. Florida* (2010) 560 U.S. 48, 68 (*Graham*).) The Eighth Amendment's prohibition on cruel and unusual punishment "encompasses the 'foundational principle' that the 'imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children.' (*Miller*, [at p.] ___ [132 S.Ct. at p. 2466].) From this principle, the high court has derived a number of limitations on juvenile sentencing: (1) no individual may be executed for an offense committed when he or she was a juvenile (*Roper* [*v. Simmons* (2005) 543 U.S. 551,] 578); (2) no juvenile who commits a nonhomicide offense may be sentenced to LWOP (*Graham, supra,* 560 U.S. at p. 74); and (3) no juvenile who commits a homicide offense may be automatically sentenced to LWOP (*Miller*, at p. ____ [132 S.Ct. at p. 2460])." (*People v. Franklin* (2016) 63 Cal.4th 261, 273–274 (*Franklin*).)

Section 3051 was enacted to address these principles. The Legislature stated its intent in enacting Senate Bill No. 260, which added section 3051 and amended sections 3041, 3046, and 4801: "The purpose of this act is to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity, in accordance with the decision of the California Supreme Court in *People v. Caballero* (2012) 55 Cal.4th 262 and the decisions of the United States Supreme Court in *Graham*[, *supra*,] 560 U.S. 48, and *Miller* [, *supra*, 567 U.S. ____ [132 S.Ct. 2455]]. . . . It is the intent of the Legislature to create a process by which growth and maturity of youthful offenders can be assessed and a meaningful opportunity for release established." (Stats. 2013, ch. 312 (Sen. Bill No. 260), § 1.)[5]

Section 3051 provides that an offender convicted of a "controlling offense" committed before he or she was 23 years old,[6] for which he or she receives a determinate sentence, becomes eligible for release on parole "during his or her 15th year of incarceration, unless previously released pursuant to other statutory provisions" (§ 3051, subd. (b)(1)); when the sentence for the controlling offense is a life term of less than 25 years to life, such an offender becomes eligible for parole during the 20th year of incarceration (§ 3051, subd. (b)(2)); and when the sentence for the controlling offense is 25 years to life, the offender becomes eligible for parole during the 25th year of incarceration (§ 3051, subd. (b)(3)). " 'Controlling offense' means the offense or enhancement for which any sentencing court imposed the longest term of imprisonment." (§ 3051, subd. (a)(2)(B).)

[5] The amendment of section 3041 by Senate Bill No. 260 did not directly address youth offenders. Section 3041 was further amended in 2015, effective January 1, 2016, to add subdivision (a)(4), prohibiting release of an inmate prior to his or her minimum eligible parole date as set pursuant to section 3046 "unless the inmate is eligible for earlier release pursuant to his or her youth offender parole eligibility date." (Stats. 2015, ch. 470 (Sen. Bill No. 230), § 1.)

[6] As originally enacted, section 3051 referred to offenses committed before the offender was 18 years old. The age was raised to 23 years by an amendment that became effective on January 1, 2016. (Stats. 2015, ch. 471 (Sen. Bill No. 261), § 1.)

8

Section 3051 requires the Board to conduct a "youth offender parole hearing" that provides "a meaningful opportunity to obtain release" and, among other things, assesses the offender's "growth and maturity." (§ 3051, subd. (d), (e), (f)(1).) "At the youth offender parole hearing, the board shall release the individual on parole as provided in Section 3041, except that the board shall act in accordance with subdivision (c) of Section 4801." (§ 3051, subd. (d).) Section 3041 sets forth the procedures for setting parole release dates, and section 4801, subdivision (c), requires the Board, in reviewing suitability for parole, to "give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law."

"[A]n inmate found suitable for parole pursuant to a youth offender parole hearing as described in Section 3051 shall be paroled regardless of the manner in which the board set release dates pursuant to subdivision (a) of Section 3041, subject to subdivision (b) of Section 3041 and Sections 3041.1 and 3041.2, as applicable." (§ 3046, subd. (c).)

Section 3051 expressly excludes certain inmates: "This section shall not apply to cases in which sentencing occurs pursuant to Section 1170.12, subdivisions (b) to (i), inclusive, of Section 667 [Three Strikes], or Section 667.61 [specified sex offenses], or in which an individual was sentenced to life in prison without the possibility of parole. This section shall not apply to an individual to whom this section would otherwise apply, but who, subsequent to attaining 23 years of age, commits an additional crime for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison." (§ 3051, subd. (h).)

Petitioner argues that the statutory scheme demonstrates the Legislature intended a youth offender to be released from prison if granted parole after serving the term specified in section 3051, subdivision (b), for his or her controlling offense, regardless of any other sentence the inmate otherwise would have had to serve. He points in particular to section 3046, subdivision (c), which provides that a finding of parole suitability pursuant to section 3051 prevails over any parole determination made pursuant to section

9

3041, subdivision (a), and section 3051, subdivision (h), establishing the exceptions to application of section 3051.

None of the exceptions stated in section 3051, subdivision (h), apply to petitioner: He was not sentenced pursuant to the Three Strikes law or section 667.61 or to a term of life in prison without possibility of parole, and his in-prison offense was committed *before* he reached 23 years of age and neither involved malice aforethought nor resulted in a life sentence. Relying upon " 'the maxim of statutory construction, *expressio unius est exclusio alterius,* if exemptions are specified in a statute, [a court] may not imply additional exemptions unless there is a clear legislative intent to the contrary' " (*People v. Oates* (2004) 32 Cal.4th 1048, 1057, quoting *Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1230), petitioner argues he was entitled to release upon being granted parole on his controlling offense without having to serve additional time for his in-prison offense.

Respondent, however, argues that petitioner was required to serve the consecutive term imposed for his in-prison offense under the plain terms of section 1170.1, subdivision (c), which provides that when a person is sentenced to a consecutive term for a felony committed in prison, "the term of imprisonment for all the convictions that the person is required to serve consecutively shall commence from the time the person would otherwise have been released from prison." (See *In re Thompson, supra,* 172 Cal.App.3d at pp. 259-262.) The term of imprisonment for the in-prison offense begins on the date parole becomes effective for the original offenses. (*In re Coleman* (2015) 236 Cal.App.4th 1013, 1018.) "Commencing the consecutive sentence for the custodial offense on the date the prisoner otherwise actually would have been released on parole is consistent with the Legislature's intent to punish and deter criminality in prison." (*Id.* at p. 1022.) " 'The Legislature wanted in-prison crimes to be punished more severely than crimes committed "on the outside." [Citation.] Thus, as a general rule sentences for out-of-prison offenses are calculated under subdivision (a) of section 1170.1—the greatest term of imprisonment is the principal term and the consecutive sentences are subordinate terms, served at one-third of the middle term.' (*People v. White* (1988) 202 Cal.App.3d

10

862, 869 (*White* ).) In contrast, 'Section 1170.1(c) applies to felonies committed when the defendant is confined in a state prison. The statutory scheme makes clear that such felonies, i.e., those felonies committed in prison, are exempt from the general sentencing scheme. [Citation.] A sentence under subdivision (c) is longer than a sentence imposed under subdivision (a) because the in-prison offenses are fully consecutive to the sentence for the offense for which the defendant was in prison." ' (*White,* at pp. 869–870.)" (*In re Coleman,* at pp. 1018–1019.)

Respondent argues that the youth offender parole scheme does not exempt petitioner from having to serve the consecutive term imposed for his in-prison offense. According to respondent, nothing in the language of sections 3051 or 3046 eliminates sentences under section 1170.1, subdivision (c). The exceptions stated in section 3051, subdivision (h), in respondent's view, refer to categories of inmates who are not eligible for youth offender parole hearings at all, and say nothing about whether inmates who *are* eligible for youth offender parole hearings are required to serve consecutive sentences for in-prison offenses after they would otherwise have been released pursuant to the grant of parole on the controlling offense. And section 3046, subdivision (c), respondent maintains, provides only that youth offenders found suitable for parole must be paroled regardless of any minimum eligible parole date determined pursuant to section 3041, subdivision (a).

Respondent maintains that the Board's parole authority "does not apply to determinate sentences for in-prison crimes imposed under section 1170.1, subdivision (c)." Section 3041 "addresses how the Board is to make parole decisions for indeterminate life inmates." (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1078.) Section 3041, subdivision (a)(1), begins, "In the case of any inmate sentenced pursuant to any law, other than Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2 . . ."— thus expressly excluding inmates sentenced under 1170.1. Respondent views this exclusion as demonstrating that the Board lacks authority over determinate terms for in-prison crimes sentenced under section 1170.1, subdivision (c).

11

We disagree. Section 3051 applies to individuals sentenced to determinate terms (§ 3051, subd. (b)(1)), as well as those sentenced to indeterminate terms. Determinate sentencing is governed by sections 1170 (determinate terms) and 1170.1 (aggregate terms), which are among the statutes section 3041, subdivision (a)(1), excludes from its coverage. Yet section 3051 expressly incorporates section 3041, directing that "[a]n individual subject to this section shall meet with the board pursuant to subdivision (a) of section 3041" (§ 3051, subd. (c)) and that the Board "shall release the individual on parole as provided in Section 3041" (§ 3051, subd. (d)), albeit with "great weight" to be given to youth-related factors and subsequent increased maturity. (§§ 4801, subd. (c), 3501, subd. (d).) Section 3051 thus necessarily gives the Board some authority over parole for inmates serving determinate sentences despite section 3041's statement of inapplicability to individuals sentenced pursuant to sections 1170 et seq. Respondent recognizes this, stating that section 3041, subdivision (a)(1), "gives the Board discretion over indeterminate terms, subject to the exceptions for determinate terms arising outside of prison under section 3051, subdivisions (b)(1) through (3)." Respondent thus appears to argue that the Board has authority to grant parole under section 3051 before a youth offender has completed a determinate sentence imposed pursuant to sections 1170 and 1170.1 (§ 3051, subd. (b)(1)) but does not have authority to alter the effect of a determinate term imposed for an in-prison offense under section 1170.1, subdivision (c).

The text of section 3051 does not support respondent's assumption that the statute applies only to sentences imposed for crimes committed before a youth offender is incarcerated. In fact, the text indicates the opposite. Section 3051 provides for parole suitability review for inmates whose "controlling offense" was committed before he or she was 23 years old. (§ 3051, subd. (a)(1).) As we have said, "controlling offense" is defined as "the offense or enhancement for which *any* sentencing court imposed the longest term of imprisonment." (§ 3051, subd. (a)(2)(B), italics added.) In ascertaining the intent of the Legislature, we give the words of a statute their ordinary meaning. (*People v. Broussard* (1993) 5 Cal.4th 1067, 1071.) "Any" means "one, some, or all indiscriminately of whatever quantity." (Merriam-Webster Dictionary online

12

<https://www.merriam-webster.com/dictionary/any> [as of Apr. 14, 2017].)  By referring to the longest term of imprisonment imposed by "any" sentencing court, the Legislature indicated its intent that the controlling offense used to determine a youth offender's parole hearing date under section 3051 be selected from *all* sentences imposed upon that offender, regardless of whether they were imposed in one or a number of proceedings or cases.  "Any sentencing court" is open-ended:  Nothing in section 3051 suggests the only sentences to be considered are those imposed before the offender was incarcerated, as long as the controlling offense—the one for which the longest sentence was imposed— was committed before the offender was 23 years old.

The exceptions stated in subdivision (h) of section 3051 also show that the Legislature intended section 3051 to apply to at least some in-prison offenses. Subdivision (h) of section 3051 excludes from application of the statute youth offenders who "subsequent to attaining 23 years of age" commit "an additional crime for which malice aforethought is a necessary element or for which the individual is sentenced to life in prison."  The statute does *not* exclude offenders who commit the specified additional offenses *before* age 23.  Such additional offenses will necessarily be committed in prison, since the earliest eligibility for parole offered under section 3051 is during the 15th year of incarceration, long after a youth offender will have reached age 23.  (§ 3051, subd. (b)(1).)  If the in-prison offense results in a longer sentence than the original offense for which the offender was incarcerated, the in-prison offense would become the "controlling" offense under section 3051 as "the offense or enhancement for which *any* sentencing court imposed the longest term of imprisonment."  (§ 3051, subd. (a)(2)(B), italics added.)

The Department's own website reflects this understanding.  In a flow chart entitled "How to Determine Whether an Inmate Qualifies as a 'Youth Offender' under PC § 3051," published on the Department's website, "Step One" is described as follows: "Review the complete criminal history, <u>including any crimes committed while incarcerated,</u> to determine the single crime or enhancement for which any court sentenced the inmate to the longest term.  This is the 'controlling offense' for the purposes of this

13

statute." (<http://www.cdcr.ca.gov/BOPH/docs/YOPH/FLOWCHART%20-%20How%20to%20Determine%20Whether%20an%20Inmate%20Qualifies%20as%20a%20Youth%20Offender.pdf> [as of Apr. 14, 2017].) "Step Two" asks, "Did the inmate commit the <u>controlling offense</u>, as defined above, prior to reaching his or her 23rd birthday?" (*Ibid.*) If the answer to this question is "no," the chart indicates the inmate does not qualify. If the answer is "yes," the chart indicates additional inquiries to determine whether any of the section 3051, subdivision (h), exceptions apply. The emphasized language in "Step One," which is underlined on the flow chart, demonstrates that in-prison offenses are considered within the purview of section 3051.

Contrary to respondent's argument that the Board has no authority over sentences imposed under section 1170.1, subdivision (c), petitioner maintains that the Legislature's intent to exempt youth offenders from application of section 1170.1 generally (which, of course, includes section 1170.1, subdivision (c)) is inherent in section 3051. Section 1170.1, subdivision (a), provides that when a person is convicted of two or more felonies, whether in the same or different proceedings or courts, and sentenced to consecutive terms of imprisonment, the aggregate term of imprisonment for all the offenses consists of the sum of the greatest term imposed for any of the crimes (including applicable enhancements), one-third of the term imposed for each other consecutively sentenced crime (including one-third of the term for applicable enhancements), and any additional terms for enhancements for prior convictions, prior prison terms and section 12022.1. Section 1170.1 thus requires that an inmate serve the requisite term for each consecutively sentenced offense and enhancement. Under section 3051, subdivision (b)(1), however, a youth offender sentenced to a determinate term becomes eligible for release in the 15th year of incarceration even if he or she has not yet served the aggregate determinate term. Where a youth offender is sentenced to a lengthy determinate term, then, section 3051 necessarily overrides the requirement of section 1170.1 that an inmate sentenced to consecutive terms not be released on parole before completing all the terms of imprisonment imposed.

14

Similarly, section 3051 supersedes section 1170.1 when a youth offender is consecutively sentenced to a life term and a determinate term. Section 1170.1, subdivision (a), incorporates section 669, which provides that when a person is sentenced to a life term and a consecutive determinate term, "the determinate term of imprisonment shall be served first and no part thereof shall be credited toward the person's eligibility for parole as calculated pursuant to Section 3046 or pursuant to any other section of law that establishes a minimum period of confinement under the life sentence before eligibility for parole." Under section 3051, however, a person sentenced to a life term and a determinate term becomes eligible for parole after the time specified in section 3051, subdivision (b)(2) or (b)(3), based on the life term, without regard to the determinate term. (*People v. Perez* (2016) 3 Cal.App.5th 612, 616, 618-619 [20-year-old defendant sentenced to term of 46 years to life and determinate term of 40 years eligible for parole after 25 years under section 3051].)

We see no basis for inferring that the Legislature intended section 3051 to override the otherwise applicable provisions section 1170.1 as described above but to have no effect on the application of section 1170.1, subdivision (c). The California Supreme Court explained in *Franklin, supra,* 63 Cal.4th 261, that sections 3051 and 3046 have "superseded the statutorily mandated sentences" of the youth offenders to whom the statutes apply. Section 3051 "reflects the Legislature's judgment that 25 years is the maximum amount of time that a juvenile offender may serve before becoming eligible for parole. Apart from the categories of offenders expressly excluded by the statute, section 3051 provides all juvenile offenders with a parole hearing during or before their 25th year of incarceration. The statute establishes what is, in the Legislature's view, the appropriate time to determine whether a juvenile offender has 'rehabilitated and gained maturity' (Stats. 2013, ch. 312, § 1) so that he or she may have 'a meaningful opportunity to obtain release' (§ 3051, subd. (e))." (*Franklin*, at p. 278.) This statutory scheme, designed to effectuate the constitutional prohibition against excessive punishment of youthful offenders, would be thwarted if a youth offender found suitable for parole

15

pursuant to section 3051 was required to remain in custody due to a consecutive sentence for an in-prison offense.

This is particularly true here, where the in-prison offense was committed while petitioner was still of an age deemed by the Legislature to warrant consideration of the "diminished culpability of juveniles as compared to adults" and "hallmark features of youth." (See § 4801, subd. (c).) Senate Bill No. 260 stated the Legislature's findings that "as stated by the United States Supreme Court in *Miller*[, *supra*, 567 U.S.] ___ [132 S.Ct. 2455], 'only a relatively small proportion of adolescents' who engage in illegal activity 'develop entrenched patterns of problem behavior,' and that 'developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds,' including 'parts of the brain involved in behavior control.' The Legislature recognizes that youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society." (Stats. 2013, ch. 312 (Sen. Bill No. 260), § 1.) While petitioner's 1982 crime was not the "controlling offense" under section 3051 (because the sentence imposed for it was shorter than the term imposed for petitioner's murder conviction) and the four-year consecutive sentence was not in itself of a length to trigger the concerns with disproportionate punishment of juvenile offenders discussed in cases such as *Miller*, at p. ____ [132 S.Ct. at p. 2466], it would be anomalous to conclude that the Legislature intended to permit extension of a youth offender's incarceration beyond the time he or she was found suitable for parole under section 3051 procedures due to commission of an in-prison offense committed when the offender was still subject to the "immaturity, recklessness, and impetuosity" that " ' "render juveniles less culpable than adults." ' " (*Miller*, at p. ____ [132 S.Ct. at p. 2465], quoting *Graham*, *supra*, 560 U.S. at p. 72.)[7]

---

[7] It is not necessary for us to consider, in the present case, the application of section 1170.1, subdivision (c), to an individual serving a sentence for a controlling offense under section 3051 who commits an in-prison offense when he or she is 23 years old or older. It is obvious, however, that in considering a youth offender's suitability for

16

Respondent argues that the consecutive sentence must be given effect because a sentence imposed for an in-prison offense is treated as a new principal term rather than a subordinate term to the sentence on the out-of-custody offense. (*In re Tate* (2006) 135 Cal.App.4th 756, 765 (*Tate*).) Respondent reasons that because the consecutive term did not merge with the life sentence, it cannot be "credited against" the life term. However reasonable this argument may be in a case not subject to section 3051, it ignores both the underlying purpose and the text of the youth offender parole statute. The parole eligibility date determined under section 3051, as we have said, is based on the longest sentence imposed upon the inmate by "any" sentencing court, "supersed[ing] the statutorily mandated sentences" of the youth offenders to whom sections 3051 and 3046 apply. (*Franklin, supra,* 63 Cal.4th 261.)

Respondent further argues that failing to apply section 1170.1, subdivision (c), to require this additional period of incarceration would provide youth offenders a windfall, enabling them to commit additional offenses during their incarceration "with immunity." Again we disagree. The fact that a youth offender found suitable for parole on the controlling offense will not be required to additionally serve the consecutive sentence imposed for an in-prison offense does not mean the offender escaped punishment for the in-prison offense. The time frames established in section 3051, subdivision (b),

_____

parole release, commission of an in-prison offense after age 23 would weigh against finding the inmate had " 'rehabilitated and gained maturity' " (*Franklin, supra,* 63 Cal.4th at p. 278, quoting Stats. 2013, ch. 312, § 1) so as to warrant release pursuant to section 3051.

It is noteworthy that the commissioner, in pronouncing the panel's decision to grant parole, commented that while there had been "a lengthy period of positive rehabilitation" that "didn't start right away," petitioner had been "almost three decades violence free" and, for a "shorter" but still "long" period, "disciplinary free." The commissioner stated that petitioner exhibited the "hallmark features of youth" at the time of the murder and that his subsequent maturity did not come quickly, but that at the time of the hearing, the panel would have found petitioner suitable for parole "even if SB 260 wasn't here" due to his genuine remorse and acceptance of responsibility for his crime, the reduced probability of recidivism at petitioner's age (53 years), his engagement in institutional activities indicating "an enhanced ability to function within the law upon release," his work on issues with substance abuse, and his realistic plans for release.

determine when an offender is entitled to a *hearing* on *suitability* for parole, not when he or she is actually entitled to release. Parole will not be granted if the panel or Board "determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual." (§ 3041, subd. (b)(1).) The determination of suitability for parole will necessarily take in-prison offenses into account in determining the degree of risk an inmate poses to the public and the extent of a youth offender's growth and maturity.

Respondent maintains that the Board's consideration of suitability factors is insufficient because it is not "the sentence contemplated by the sentencing courts, prosecutors, or the Penal Code." But this is true of all sentences affected by section 3051: The point is that a youth offender is not necessarily deserving of the same punishment as an adult who committed the same offense. Moreover, while section 3051 guarantees youth offenders the opportunity to obtain release sooner than might be possible for inmates who were older when they committed comparable crimes, the required suitability determination may result in the youth offender serving considerably more time due to commission of an in-prison offense than what he or she would serve under a specific determinate sentence for that offense.

The present case demonstrates the point. According to Department records, petitioner began serving his life term on June 24, 1980, and his minimum eligible Parole Date was set at June 28, 1989. He was not found suitable for parole until 2015, almost 27 years after that earliest possible parole date. In 2010, although the Board commissioner noted that petitioner had had a "change-around," dissociated himself from gangs and been "disciplinary-free for a long time," petitioner was denied parole based in large part on his "terrible" institutional behavior, notably the incident underlying his 1982 offense, in which petitioner stabbed a correctional officer, as well as numerous disciplinary issues involving violence, substance abuse, weapons possession, and gang activity. In 2013, the Board found petitioner suitable for release but this decision was reversed by the governor, who discussed petitioner's lengthy history of substance abuse, gang involvement and

18

violence and specifically noted the 1982 offense. Petitioner was denied parole by the Board in 2014 for similar reasons, the commissioner describing the 1982 incident as an "egregious act of violence" committed when petitioner was "no longer necessarily impacted by the youthful offender factors"—section 3051 then applying to offenders whose crimes were committed before age 18, as well as expressing concern about petitioner continuing to minimize the life crime and retaining vestiges of gang culture despite his "significant gains." While the 1982 offense was not the only reason petitioner was not found suitable for release sooner, it clearly played an important role, as it was specifically discussed as a factor bearing on each of the parole denials.

We conclude that petitioner was entitled to release when his parole became effective on November 2, 2015, notwithstanding the consecutive four-year term imposed on his 1982 conviction.

Petitioner sought preliminary relief through a motion for release on parole pending final determination of the proceedings in this court. We granted that motion on April 10, 2017, ordering respondent to release petitioner on parole, in accordance with the terms of his parole grant and demands of due process, pending resolution of his petition in this court. We now order that relief as the final decision of this court on the petition for writ of habeas corpus.[8]

---

[8] A superficially analogous situation is presented when the Governor reverses a decision to grant parole and that reversal is subsequently overturned, reinstating the Board's decision. In that situation, where the inmate has remained in custody beyond a release date subsequently determined to have been valid, "the remedy is not an order for the inmate's immediate release; rather, the court vacates the Governor's reversal, reinstates the Board's grant of parole, and directs the Board to conduct its usual proceedings for a release on parole. This allows the Board to account for any recent developments reflecting on the inmate's suitability for parole, and to rescind its grant if appropriate. (*In re Twinn* (2010) 190 Cal.App.4th 447, 473–474; cf. [*In re Prather* (2010) 50 Cal.4th 238,] 258.)" (*In re Lira* (2014) 58 Cal.4th 573, 582 (*Lira*); *In re Copley* (2011) 196 Cal.App.4th 427, 436-437.) In that situation, however, the inmate's parole status remains uncertain throughout the proceedings before the Governor and then the courts; the Board's initial decision does not become final until the legal challenges have concluded. In the present case, petitioner's parole status with respect to his life sentence was established as of November 2, 2015, when the Board's decision granting

19

**III.**

Petitioner contends that he is entitled to have his period of parole supervision reduced by the amount of time he has served since November 2, 2015, on his determinate sentence for the 1982 offense. Petitioner will be required to serve a five-year period of parole upon release from prison. (See *In re Carabes* (1983) 144 Cal.App.3d 927, 930, fn. 1; § 3000.1.)[9] "[C]ase law recognizes that time served in excess of the determinate term must be credited against the prisoner's parole period." (*In re Bush* (2008) 161 Cal.App.4th 133, 141 (*Bush*).)

Respondent's argument that petitioner is not entitled to this credit against his parole period is based largely upon *Tate, supra,* 135 Cal.App.4th 756.[10] As noted above,

---

him parole became final. The time he has spent in custody since then is due solely to the determinate sentence imposed under section 1170.1, subdivision (c).

[9] Under section 3000.1, subdivision (a), an inmate sentenced to a maximum life term for second degree murder subject to parole for life, with discharge after five continuous years on parole unless the Board, for good cause, retains the individual on parole. (*Lira*, *supra*, 58 Cal.4th at p. 579, fn. 5.) Because his 1982 offense and conviction predated the effective date of section 3000.1, however, petitioner is subject to the previously applicable five-year parole supervision period. (*Lira*, at p. 579; *In re Carabes, supra,* 144 Cal.App.3d at p. 930, & fn. 1.)

[10] Respondent additionally cites *Lira, supra,* 58 Cal.4th at pages 581-582, and *Bush, supra,* 161 Cal.App.4th at page 143, both of which stand for the proposition that an inmate is not entitled to credit for time that is *lawfully* served. In *Lira*, the Governor reversed the grant of parole but that reversal was overturned in court. (*Lira*, at p. 577.) The inmate was not entitled to credit for the time served between the Governor's erroneous reversal and his eventual release because this period of incarceration was not unlawful but rather a consequence of the time required for the Governor's constitutionally sanctioned independent review of parole suitability determinations. (*Id.* at pp. 581-582.) *Bush* rejected the claim that an inmate serving an indeterminate life sentence was entitled to credit against his parole period for the time he had served in excess of the base term for his offense by the time he was found suitable for release: The confinement was lawful, as an inmate is not entitled to release until he or she has both served the base term *and* been found suitable for release. (*Bush*, at pp. 141-143.) Reliance upon these cases reflects respondent's view that petitioner was required to serve the consecutive term imposed under section 1170.1, subdivision (c), after being found suitable for parole. The cases offer no support for an argument that petitioner is not

20

*Tate* involved the principle that a consecutive term under section 1170.1, subdivision (c), does not merge with or become part of the aggregate term imposed for offenses committed outside of prison. (*Tate*, at p. 765.) The inmate in *Tate* was originally incarcerated for a violent felony, which limited the accrual of worktime credit to 15 percent of his sentence. (*Id.* at pp. 758-759.) When he was subsequently sentenced to a consecutive term for a nonviolent in-prison offense, the Department applied the 15 percent limitation to this sentence as well, rather than the usual rule of 50 percent credit accrual. (*Id.* at p. 759.) Contrary to the Department's view that the consecutive sentence merged into a single aggregate term subject to the 15 percent limitation required for the original sentence, *Tate* held that the sentence under section 1170.1, subdivision (c), was a separate term that did not begin until the inmate had completed the original sentence. (*Tate*, at p. 765.) Consequently, when the inmate began serving the consecutive term, he was no longer serving time for a violent offense and therefore not subject to the 15 percent limitation. (*Ibid.*)

We have already rejected the premise of this argument, that section 1170.1, subdivision (c), operates in the same manner in a section 3051 case as in the case of an offender not entitled to the protections of section 3051. Because the parole provisions of section 3051 supersede petitioner's otherwise statutorily mandated sentences (*Franklin, supra,* 63 Cal.4th at p. 261), the *Tate* court's reasoning is inapplicable here.

Petitioner's continued confinement to serve the consecutive sentence imposed under section 1170.1, subdivision (c), was not lawful in the circumstances of this case, and he is entitled to credit against his parole period.

## DISPOSITION

Respondent is ordered to amend petitioner's release date to November 2, 2015, and to deduct from his parole period the days of incarceration served beyond that date.

---

entitled to credit if, as we have concluded, he should not have been required to serve the consecutive term.

21

Our order filed on April 10, 2017, granting petitioner's motion for release, ordered respondent Warden of Ironwood State Prison to release petitioner on parole, in accordance with the terms of his parole grant and demands of due process pending resolution of his petition in this court. We now order that relief as the final decision of this court on the petition for writ of habeas corpus.

Good cause appearing, this decision shall be final as to this court immediately. (Cal. Rules of Court, Rule 8.387, subd. (b)(3)(A).)

_____
Kline, P.J.


We concur:


_____
Stewart, J.


_____
Miller, J.

Trial Court:                                   Marin County Superior Court

Trial Judge:                                  Hon. James T. Chou

Attorneys for Petitioner:            Law Office of Tracy Renee Lum
Tracy Renee Lum
Michael Satris

Attorneys for Respondent:         Office of the Attorney General
Xavier Becerra
Attorney General of California

Phillip J. Lindsay
Senior Assistant Attorney General

Sara J. Romano
Supervising Deputy Attorney General

Jennifer G. Ross
Deputy Attorney General