Filed 10/12/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>PHILIP LEO SANDS,<br><br>        Defendant and Appellant. | A160973<br><br>(San Francisco City & County<br>Super. Ct. Nos. SCN 195209,<br>SCN 184929) |

Philip Leo Sands was 24 years old when he committed, among other crimes, special circumstance murder (Pen. Code §§ 187, 190.2, subd. (a)(10)),[1] and was sentenced to a prison term of life without the possibility of parole. He filed a postjudgment motion in the superior court, seeking to develop a record of mitigating circumstances for an eventual youth offender parole hearing (see *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*)). The trial court denied Sands's motion, and he appeals. He acknowledges that, having been sentenced to life without the possibility of parole for a crime he committed after the age of 18, he is statutorily ineligible for a youth offender parole hearing (§

---

[1] Undesignated statutory references are to the Penal Code.

1

3051, subd. (h)) but argues the statutory exclusion violates his rights to equal protection.[2]  We disagree and affirm.

## BACKGROUND

### A.

In response to a series of decisions addressing Eighth Amendment limits on juvenile sentencing (see, e.g., *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*); *Graham v. Florida* (2010) 560 U.S. 48, 75), the Legislature enacted section 3051.  (Sen. Bill No. 260 (2013-2014 Reg. Sess.), Stats. 2013, ch. 312, §§ 1, 4; *In re Trejo* (2017) 10 Cal.App.5th 972, 980-981 & fn. 6.)  In its current form, the statute provides an opportunity for release (via youth offender parole hearings) to most persons convicted of crimes committed before the age of 26 in their 15th, 20th, or 25th year of incarceration, depending on the sentence imposed for their " '[c]ontrolling offense.' "  (§ 3051, subds. (a)(2)(B), (b)(1)-(4).)

The Legislature originally "passed [section 3051] explicitly to bring juvenile sentencing into conformity with *Graham* [and] *Miller*" as well as decisions from the California Supreme Court. (*Franklin, supra,* 63 Cal.4th at p. 277.)  It also explained that recent developments in neuroscience showed that "youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs," such individuals can, by demonstrating rehabilitation and maturity, become contributing

---

[2] Sands also filed a petition for writ of habeas corpus/mandate (A160707).  We deferred the question of whether to issue an order to show cause pending this appeal.  By separate order, we dismiss the habeas petition.

members of society.  (Sen. Bill No. 260 (2013-2014 Reg. Sess.), Stats. 2013, ch. 312, § 1.)

The statute originally limited eligibility for youth offender parole hearings to juvenile offenders (although it excluded juveniles sentenced to life without the possibility of parole).  (See *People v. Morales* (2021) 67 Cal.App.5th 326, 346 (*Morales*).)  However, the Legislature later amended it to apply to most offenders who committed crimes before the age of 23, and then before the age of 26.  (*In re Trejo, supra,* 10 Cal.App.5th at p. 981 & fn. 6; Sen. Bill No. 261 (2015-2016 Reg. Sess.), Stats. 2015, ch. 471, § 1; Sen. Bill No. 394 (2017-2018 Reg. Sess.), Stats. 2017, ch. 684, § 1.5.)  In broadening the statute's reach, our Legislature again cited recent developments in neuroscience that indicate the maturity process does not end at 18 and that, in many cases, brain development involved in decision making and impulse control extends into one's early 20s.  (*People v. Acosta* (2021) 60 Cal.App.5th 769, 776-777 (*Acosta*); *In re Williams* (2020) 57 Cal.App.5th 427, 434 (*Williams*).)

The Legislature also amended section 3051 to allow parole hearings, in their 25th year of imprisonment, for juveniles sentenced to life without the possibility of parole for crimes committed before age 18. (§ 3051, subd. (b)(4); Sen Bill No. 394 (2017-2018 Reg. Sess.), Stats. 2017, ch. 684, § 1.5.)  That amendment was aimed at remedying unconstitutional juvenile sentences without the need for an expensive and time-consuming resentencing hearing.  (*Morales*, *supra*, 67 Cal.App.5th at p. 347; see *Montgomery v. Louisiana* (2016) 577 U.S. 190, 736 ["[a] State may remedy a *Miller* violation by permitting

3

juvenile homicide offenders to be considered for parole, rather than by resentencing"].)

Section 3051, subdivision (h), continues to exclude certain categories of youthful offenders from the youth offender parole hearing process. (*Morales*, *supra,* 67 Cal.App.5th at p. 346.) The process is unavailable to offenders "sentenced to life in prison without the possibility of parole for a controlling offense that was committed *after the person had attained 18 years of age.*" (§ 3051, subd. (h), italics added.) The statute also categorically excludes offenders sentenced under the One Strike Law (§ 667.61) or the Three Strikes Law (§§ 667, 1170.12). (§ 3051, subd. (h).)

## B.

In 2001, Sands stabbed Robin Clarke, inflicting life-threatening injuries. Sands's friend, Robert Ramirez, witnessed the stabbing. When Sands was charged, Ramirez was ordered to return to court to testify. In 2003, after Sands posted bail, he killed Ramirez by firing a machine gun at him at least 30 times while Ramirez sat in a parked car. Sands was 24 years old at the time.

In 2005, a jury convicted Sands of first degree murder (§ 187), as well as other charges, and found true a special circumstance allegation that Sands committed the murder to prevent a witness from testifying (§ 190.2, subd. (a)(10)). The trial court sentenced Sands to a prison term of life without the possibility of parole, plus an additional indeterminate term of 25 years to life. A different panel of this division affirmed the judgment on direct appeal. (*People v. Sands* (Oct. 31, 2008, A112684) [nonpub. opn.])

4

In 2020, Sands filed a motion for a *Franklin* record development hearing in the superior court, arguing that section 3051 violates the equal protection clause on its face because it irrationally excludes offenders who were sentenced to life without the possibility of parole for crimes they committed at age 18 to 25. The trial court denied his motion.

## DISCUSSION

### A.

The initial question is whether the trial court's order—denying Sands's motion for a *Franklin* record development hearing—is an appealable order. The People concede that it is, and we agree. But the People add a caveat that Sands must file a habeas corpus petition to resolve the equal protection issue. We reject that argument.

### 1.

At a youth offender parole hearing, the Board of Parole Hearings must "give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner." (§ 4801, subd. (c); *Franklin, supra,* 63 Cal.4th at p. 269 [Board "will be informed by youth-related factors, such as . . . cognitive ability, character, and social and family background at the time of the offense"].) Thus, the youth offender parole mechanism necessitates preserving a record of the relevant youth-related characteristics and circumstances at the time of the offense so that the Board, years later, may properly discharge its obligations. (*Franklin, supra*, at p. 284.)

In *In re Cook* (2019) 7 Cal.5th 439 (*Cook*), our Supreme Court held that, even though an offender's sentence is otherwise final, he or

she is nonetheless entitled to seek the remedy of a *Franklin* proceeding. (*Cook, supra,* at p. 451.)  The court also concluded that an offender need not file a petition for writ of habeas corpus but should instead use the more efficient remedy of filing a section 1203.01 motion in superior court, which allows the trial court to "create a postjudgment record for the benefit of the Department of Corrections and Rehabilitation." (*Id.* at pp. 452, 457-458.)  *Cook* indicated that this was an "adequate remedy at law that makes resort to habeas corpus unnecessary, at least in the first instance" (*id.* at p. 452), and reversed the judgment of the court of appeal, which had concluded habeas relief was appropriate. (*Id.* at pp. 447-448, 460.)  *Cook* did not address the appealability of an order denying record development proceedings.

**2.**

We agree with the parties that the trial court's order—denying Sands relief under *Cook* and section 1203.01—is appealable as a postjudgment order affecting Sands's substantial rights (§ 1237, subd. (b)).

A criminal defendant may appeal "[f]rom any order made after judgment, affecting [their] substantial rights." (§ 1237, subd. (b).) *Cook* and section 1203.01 create a substantial right for offenders to obtain a *Franklin* record development hearing.  Because the trial court determined Sands is ineligible for such a hearing, the trial court's order affected his substantial rights and is, therefore, appealable. (See § 1237, subd. (b); *Teal v. Superior Court* (2014) 60 Cal.4th 595, 598-601 [order denying motion for recall of sentence, filed under § 1170.126, is an appealable order under § 1237, subdivision (b), even though trial court (and court of appeal) concluded defendant was ineligible]; cf.

6

*People v. Jackson* (2021) 61 Cal.App.5th 189, 192-194 (*Jackson*) [implicitly concluding order denying *Cook* motion is an appealable order].)

**3.**

We are unpersuaded by the People's argument that Sands must litigate the equal protection issue in a habeas petition.

To support this position, the Attorney General contends that *Cook* is distinguishable—because the *Cook* offender *was* statutorily eligible for a youth offender parole hearing under section 3051, subdivision (b)(3). (*Cook, supra*, 7 Cal.5th at p. 447.) Here, in contrast, Sands acknowledges that he is statutorily ineligible for a youth offender parole hearing (§ 3051, subd. (h)) and a *Franklin* record development hearing. Sands argues he is entitled to a record development hearing and eventual youth offender parole hearing *as a matter of equal protection* because section 3051 improperly discriminates against him. The People posit Sands's equal protection argument necessitates relief beyond mere record development and must be litigated in a habeas petition.[3]

---

[3] Sands filed a request for judicial notice of the habeas corpus proceedings currently pending before us (A160707), as well as an earlier petition (A158556) that this division denied without prejudice. We originally deferred ruling on Sands's unopposed request. We take judicial notice of the record in his prior habeas proceeding (Evid. Code, §§ 452, subd. (d), 459, subd. (a)), but otherwise deny the request as unnecessary. We agree with Sands that, in denying (without prejudice) Sands's earlier petition for writ of habeas corpus (A158556), this division suggested that his remedy—should section 3051 violate equal protection–-was to file a motion (under the authority of section 1203.01 and *Cook*). We note, however, we are not bound by that ruling. (*Gomez v. Superior Court* (2012) 54 Cal.4th 293, 305, fn. 6 ["the summary

The *Cook* court cited practical reasons for preferring a motion over a habeas petition. Although the court did not decide if the habeas writ "is expansive enough to afford Cook the relief he seeks" (*Cook, supra,* 7 Cal.5th at p. 457), it concluded that resort to habeas corpus "in the first instance" was unnecessary. (*Id.* at p. 452.) The court explained that " '[a] person unlawfully imprisoned or restrained of his or her liberty . . . may prosecute a writ of habeas corpus to inquire into the cause of his or her imprisonment or restraint.' " (*Ibid.,* quoting § 1473, subd. (a).) It noted that, among other requirements, a habeas petitioner must file and verify a petition alleging unlawful restraint, name the custodian, specify the facts on which the claim is based, and include documentary evidence. (*Id.* at p. 457.) The court deemed habeas procedures "unnecessarily cumbersome" because Cook was not seeking release or challenging the validity of the underlying judgment and because *Franklin* record development does not require the trial court to act as fact finder. (*Cook,* at pp. 449, fn. 3 and 457.) Instead, the court fashioned a more simple and efficient motion process by supplementing Penal Code section 1203.01 with the court's inherent power to manage its proceedings and with Code of Civil Procedure section 187. (*Cook,* at pp. 454-455; see Code Civ. Proc., § 187 [granting court with jurisdiction broad authority to use "any suitable process or mode of proceeding" in the absence of specific statutory procedure].)

The People do not persuade us that Sands's situation is materially distinguishable. Like Cook, Sands is not seeking release or challenging the validity of the underlying judgment; he seeks a record

denial of a habeas corpus petition does not establish law of the case and does not have a res judicata effect in future proceedings"].)

8

preservation hearing. The trial court is not required to make factual findings—Sands brings only a facial equal protection challenge. (See *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.) Any offender that brings a *Cook* motion must establish his entitlement to a youth offender parole hearing in his moving papers (*Cook*, *supra*, 7 Cal.5th at p. 459), which is how Sands raised the equal protection issue. The more cumbersome habeas procedure would add no value to the process. It would just add the same sort of unnecessary complications that led the *Cook* court to permit an offender to proceed by a motion rather than a habeas petition.

## B.

Sands contends section 3051, subdivision (h), violates his equal protection rights. We review the constitutional question independently (*Samples v. Brown* (2007) 146 Cal.App.4th 787, 799) and find no violation of equal protection.

## 1.

Equal protection ensures that the government does not treat one group of people "unequally" in comparison to other groups with similar characteristics "without some justification." (*People v. Chatman* (2018) 4 Cal.5th 277, 288.) First, we consider whether " 'the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.' " (*People v. Brown* (2012) 54 Cal.4th 314, 328, italics omitted.) The groups need not be similar in all respects but must be similarly situated for the purposes of the challenged law. (*Ibid.*) Second, if two similarly situated groups have been identified and no suspect class or fundamental rights are at issue, we must decide

9

whether there is any rational basis to support treating the groups differently. (*People v. Turnage* (2012) 55 Cal.4th 62, 74.)

There are three groups of offenders at issue here: (1) Sands's group, which consists of young adult offenders who were sentenced to life without parole for crimes they committed at age 18 to 25; (2) juvenile offenders who were sentenced to life without parole for crimes they committed under the age of 18, and (3) young adult offenders sentenced to so-called "de facto life without parole" for crimes they committed between the age of 18 and 25. Offenders in this third group are technically eligible for parole but not within their natural lifetimes. Sands argues his group is similarly situated to the other two groups and that there is no rational basis for extending youth parole hearings to offenders in those groups while excluding his. (§ 3051, subds. (a)(2)(B), (b)(3), (b)(4), (h).)

**2.**

We assume that the first prong of the test is met—i.e, that young adult offenders sentenced to life without parole are similarly situated to both juvenile offenders sentenced to life without parole and to young adult offenders sentenced to de facto life without parole. (But see *In re Williams*, *supra,* 57 Cal.App.5th at p. 435 [young adult offenders sentenced to life without parole are not similarly situated to those sentenced to de facto life without parole]; *People v. Rhodes* (2005) 126 Cal.App.4th 1374, 1384-1385 (*Rhodes*) [defendants who committed distinctly classified homicides are not similarly situated for purposes of sentencing].)

Section 3051's "legislative history suggests the Legislature was motivated by dual concerns: that lengthy life sentences did not

10

adequately account for, first, the diminished culpability of youth, and, second, youthful offenders' greater potential for rehabilitation and maturation." (*Williams, supra,* 57 Cal.App.5th at p. 434.) There is certainly no indication that the second concern—young offenders' capacity for growth and rehabilitation—disappears simply because a young adult has passed the age of 18 or has been sentenced to life without parole. (See *Acosta, supra,* 60 Cal.App.5th at p. 779; *Williams, supra,* at p. 435 ["[b]oth groups are equally likely to demonstrate improved judgment and decisionmaking as they reach emotional and cognitive maturity"]; *Miller, supra,* 567 U.S. at p. 473 ["none" of what has been said about children's "distinctive (and transitory) mental traits and environmental vulnerabilities . . . is crime-specific"].)

**3.**

Sands's challenge fails at the second stage of the inquiry— whether there is a rational basis for the disparate treatment.

The rational basis test sets a very high bar. The Legislature's classifications are presumed to be rational. (*People v. Chatman, supra,* 4 Cal.5th at p. 289.) A challenger must demonstrate there is no conceivable rational basis for them. (*Ibid.*) We must accept any plausible rational basis without questioning its wisdom, logic, persuasiveness, or fairness, and regardless of whether the Legislature ever articulated it. (*Ibid.*)

The Legislature had a rational basis to distinguish between offenders with the same sentence (life without parole) based on their age. For juvenile offenders, such a sentence may violate the Eighth Amendment. (*Graham v. Florida, supra,* 560 U.S. at p. 75; *Miller, supra,* 567 U.S. at p. 479.) But the same sentence does not violate the

11

Eighth Amendment when imposed on an adult, even an adult under the age of 26. (*Morales, supra*, 67 Cal.App.5th at p. 347.) We agree with the other courts of appeal that the Legislature could rationally decide to remedy unconstitutional sentences but go no further. (*In re Murray* (2021) 68 Cal.App.5th 456, 463-464 [age is rational basis for distinction]; *Morales, supra,* 67 Cal.App.5th at p. 347; *Acosta, supra,* 60 Cal.App.5th at pp. 779-780; *Williams, supra*, 57 Cal.App.5th at p. 435, fn. 5; see *Miller, supra,* 567 U.S. at p. 481 ["[w]e have by now held on multiple occasions that a sentencing rule permissible for adults may not be so for children"]; *Roper v. Simmons* (2005) 543 U.S. 551, 574 ["[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood"].)

Likewise, there is a rational basis for distinguishing the remaining group—young adult offenders sentenced to de facto life without parole. The Legislature may rationally treat offenders in this group less harshly because it deems their underlying crimes, such as first degree murder, less grave than special circumstance murder. (See *Morales, supra,* 67 Cal.App.5th at pp. 348-349; *Jackson, supra,* 61 Cal.App.5th at p. 200; *Acosta, supra,* 60 Cal.App.5th at pp. 779-780; *Williams, supra,* 57 Cal.App.5th at p. 436.) Most people sentenced to life without parole, like Sands, have committed *both* first degree murder *and* been found to have committed that murder under one of the aggravating circumstances specified in the special circumstance murder statute. (§ 190.2, subd. (a); *Morales, supra,* at p. 348; *Jackson, supra,* at p. 199.) Simply put, "[t]hese are the crimes the Legislature deems so morally depraved and so injurious as to warrant a sentence

12

that carries no hope of release for the criminal and no threat of recidivism for society." (*Williams, supra*, at p. 436.)

The Legislature's distinction is not irrational simply because *some* offenders sentenced to life without the possibility of parole are arguably less culpable than *some* offenders receiving lesser sentences. A legislative classification does not fail rational basis review because it is " 'imperfect ' " or " 'because it may be "to some extent both underinclusive and overinclusive." ' " (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 887.)

It is well settled that the Legislature has broad latitude to define crimes, separate them into degrees, and assign them different punishments based on its view of the crimes' comparative gravity and on policy objectives like deterrence, retribution, and incapacitation. (See *Rhodes, supra*, 126 Cal.App.4th at pp. 1384-1387 [rejecting equal protection challenge to Legislature's decision to punish second degree murder of a police officer more harshly than some forms of first degree murder]; *People v. Wilkinson* (2004) 33 Cal.4th 821, 840-841.) Although section 3051 may not be "a sentencing statute per se, it nevertheless impacts the length of sentence served." (*In re Murray, supra,* 68 Cal.App.5th at p. 464.)

This case illustrates the point. Sands murdered a witness to prevent him from testifying. By denying any possibility of parole to special circumstance murderers, the Legislature presumably hopes to deter others from committing similar offenses in the future. It is in no way irrational, or even contradictory, that the Legislature allows parole for other youthful offenders who, in its view, committed less heinous homicides.

13

For this reason, Sands misplaces his reliance on *People v. Edwards* (2019) 34 Cal.App.5th 183, 195-199. *Edwards* considered section 3051's exclusion of sex offenders sentenced under the One Strike law. The *Edwards* court held that it violates equal protection to grant youth offender parole hearings to first degree murderers while denying them to sex offenders, given a consistent body of constitutional precedent concluding that sex crimes, though abhorrent, are categorically less deserving of society's harshest punishment than homicides. (*Id.* at pp. 197-198, citing *Graham*, *supra*, 560 U.S. at p. 69 and *People v. Contreras* (2018) 4 Cal.5th 349, 366.) Sands is unable to point to any authority suggesting the Legislature has no rational basis for punishing one form of homicide more severely than another.[4] (See *Rhodes*, supra*, 126 Cal.App.4th at pp. 1384-1387 [rejecting equal protection argument that second degree murder of a peace officer engaged in the performance of his duties cannot rationally be punished more harshly than first degree murder of an off-duty officer].)

## DISPOSITION

The order denying Sands's motion for a record development hearing is affirmed.

---

[4] The issue presented in *Edwards* is currently before the California Supreme Court. (*People v. Williams* (2020) 47 Cal.App.5th 475, 490 [disagreeing with *Edwards*; no equal protection violation], review granted July 22, 2020, S262191.)

_____
BURNS, J.

We concur:


_____
NEEDHAM, ACTING P.J.



_____
RODRIGUEZ, J.*


A160973

---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15

San Francisco City and County Superior Court Case Nos. SCN 195209, SCN 184929. The Honorable Loretta M. Giorgi.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, and Katie L. Stowe, Deputy Attorney General, for Plaintiff and Respondent.

Mary K. McComb, State Public Defender and Laura S. Kelly, Deputy State Public Defender, under appointment by Court of Appeal, First District Appellate Project Independent Case Program, for Defendant and Appellant.