Filed 12/15/21  P. v. Vo CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C093676 |
| Plaintiff and Respondent, | (Super. Ct. No. 98F03454) |
| v. | |
| RO VAN VO, | |
| Defendant and Appellant. | |

Petitioner Ro Van Vo filed a petition under Penal Code[1] section 1203.01 to make a record of relevant evidence to be considered at an inevitable youth offender parole hearing under *Cook* and *Franklin*.  (*In re Cook* (2019) 7 Cal.5th 439, *People v. Franklin* (2016) 63 Cal.4th 261.)  The trial court denied petitioner's petition finding that petitioner did not qualify for a youth offender parole hearing under section 3051.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Several weeks after petitioner turned 18, he participated in a drive-by shooting with members of the Insane Viet Boyz criminal street gang.  As a result, petitioner was

---

[1] Further section references are to the Penal Code unless indicated otherwise.

1

convicted of one count of special-circumstance murder and one count of assault with a firearm. The jury further found associated gun and gang enhancements true as to both offenses. The trial court sentenced petitioner to life without the possibility of parole (LWOP) for the murder, plus 25 year to life for the associated enhancements. The court further sentenced petitioner to 11 years for the assault and the associated enhancements.

In 2020, petitioner filed a petition under section 1203.01 requesting the trial court hold a hearing pursuant to *Franklin* and *Cook*, so that he could "make an accurate record of the Juvenile/Youth Offender's Characteristics, and circumstances at the time of the offense so that the California Board of Parole Hearings, Years Later, May properly discharge it's obligation to give great weight to the Youth related factors under Penal Code, Section[s] 4801 (c), in determining whether the Petitioner is fit to rejoin society."

The trial court denied the petition finding petitioner was ineligible for a youth offender parole hearing under section 3051, subdivisions (b)(4) and (h).

Petitioner appeals.

DISCUSSION

I

*Section 3051 Does Not Violate Equal Protection*

Petitioner agrees he is ineligible for a youth offender parole hearing under section 3051. He argues instead that section 3051, which allows LWOP offenders who committed their crimes as juveniles to be considered for youth offender parole hearings but not LWOP offenders who committed their crimes when they were between 18 to 25 years old (referred to as young-adult offenders or young-adult LWOP offenders), violates the equal protection clause of the Fourteenth Amendment to the U.S. Constitution because the section excludes young-adult offenders like him from such hearings. We disagree.

"The Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee all persons the equal protection of the

2

laws." (*People v. Edwards* (2019) 34 Cal.App.5th 183, 195.) "The right to equal protection of the law is violated when 'the government . . . treat[s] a [similarly situated] group of people unequally without some justification.' " (*People v. Love* (2020) 55 Cal.App.5th 273, 287.)

"To succeed on an equal protection claim, [petitioner] must first show that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." (*People v. Edwards*, *supra*, 34 Cal.App.5th at p. 195.) "But equal protection analysis does not require that two groups of defendants be the same, or even that they be ' " 'similarly situated for all purposes.' " ' [Citation.] It is enough that ' " ' "they are similarly situated for purposes of the law challenged." ' " ' " (*Id.* at p. 198.)

If a class of criminal defendants is similarly situated for purposes of the law challenged to another class of defendants who are treated differently, "courts look to determine whether there is a rational basis for the difference." (*People v. Edwards*, *supra*, 34 Cal.App.5th at p. 195.) "[E]qual protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' " (*People v. Turnage* (2012) 55 Cal.4th 62, 74.) "This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. [Citation.] While the realities of the subject matter cannot be completely ignored [citation], a court may engage in ' "rational speculation" ' as to the justifications for the legislative choice [citation]. It is immaterial for rational basis review 'whether or not' any such speculation has 'a foundation in the record.' " (*Id.* at pp. 74-75.)

To successfully challenge a law on equal protection grounds, petitioner must negate " ' "every conceivable basis" ' " on which "the disputed statutory disparity" might be supported. (*People v. Edwards*, *supra*, 34 Cal.App.5th at p. 195.) "If a plausible basis exists for the disparity, '[e]qual protection analysis does not entitle the judiciary to

second-guess the wisdom, fairness, or logic of the law.' " (*Id.* at pp. 195-196.) We independently review petitioner's equal protection challenge to section 3051. (*People v. Jackson* (2021) 61 Cal.App.5th 189, 195.)

Section 3051 " 'establish[es] a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she [or they] committed as a juvenile the opportunity to obtain release when he or she [or they] has shown that he or she [or they] has been rehabilitated and gained maturity.' " (*In re Trejo* (2017) 10 Cal.App.5th 972, 980; § 3051 et seq.) The statute was a response to decisions from the United States and California Supreme Courts concerning Eighth Amendment limitations on juvenile sentencing that rested on developments in science and social science showing fundamental differences between juvenile and adult minds and parts of the brain involved in behavior control. (*People v. Acosta* (2021) 60 Cal.App.5th 769, 775-776.) The Legislature sought to address "lengthy life sentences [that] did not adequately account for, first, the diminished culpability of youth, and second, youthful offenders' greater potential for rehabilitation and maturation." (*In re Williams* (2020) 57 Cal.App.5th 427, 434.)

As originally enacted in 2013, section 3051 applied where the controlling offense was committed before the offender was 18 years old (*In re Trejo*, *supra*, 10 Cal.App.5th at p. 981 & fn. 6) but excluded juvenile LWOP offenders (*People v. Acosta*, *supra*, 60 Cal.App.5th at p. 776). Additional amendments based on scientific evidence showing that areas of the brain that affect judgment and decision-making do not develop until early to mid 20's followed. (*People v. Morales* (2021) 67 Cal.App.5th 326, 346.) In 2016, the Legislature amended the statute to extend the availability of youth offender parole hearings to offenders who were under 23 years old when they committed controlling offenses. (Stats. 2015, ch. 471 (Sen. Bill No. 261), § 1, eff. Jan. 1, 2016; see *Trejo*, at p. 981 & fn. 6.) In 2018, the hearings were extended to offenders who were 25 years old or younger when they committed their controlling offenses. (Stats. 2017,

4

ch. 684 (Sen. Bill No. 394), § 3051, eff. Jan. 1, 2018.) The Legislature also amended section 3051 to allow parole hearings for juveniles sentenced to LWOP. (Stats. 2017, ch. 684; *Morales*, at p. 346.)

In the statute's current form, an offender who committed a controlling offense under the age of 25 is entitled to a youth offender parole hearing during his or her or their 15th year of incarceration if he or she or they received a determinate sentence; during his or her or their 20th year of incarceration if he or she or they received a life term of less than 25 years to life; and during his or her or their 25th year of incarceration if he or she or they received a term of 25 years to life. (§ 3051, subd. (b)(1)-(3).) An offender convicted of a controlling offense committed before the age of 18 for which he or she or they was sentenced to LWOP is entitled to a youth offender parole hearing during his or her or their 25th year of incarceration. (§ 3051, subd. (b)(4).) An offender convicted of a controlling offense committed after the age of 18 for which he or she or they was sentenced to LWOP, is not entitled to a youth offender parole hearing at any point. (§ 3051, subd. (h).)

Several courts have recently grappled with equal protection challenges similar to those raised by petitioner. For example, Division Three of the Fourth District Court of Appeal issued *Acosta*, which rejected an equal protection challenge to section 3051. (*People v. Acosta*, *supra*, 60 Cal.App.5th at p. 772.) There, the defendant argued that section 3051 violated equal protection by granting future parole consideration to juveniles sentenced to LWOP but not to young adults sentenced to LWOP. (*Id*. at pp. 777-778.) After concluding that young-adult LWOP offenders were similarly situated to juvenile LWOP offenders (*id*. at p. 778), the *Acosta* court concluded the Legislature had a rational basis for excluding them from parole eligibility while extending the benefit to juvenile LWOP offenders (*id*. at p. 779). The *Acosta* court observed that extending section 3051 to include juvenile LWOP offenders was the result of the United States Supreme Court's decision in *Montgomery v. Louisiana* (2016) 577

5

U.S. 190 [193 L.Ed.2d 599], which held that the prohibition on mandatory LWOP sentence for juveniles established in *Miller v. Alabama* (2012) 567 U.S. 460 [183 L.Ed.2d 407], was retroactive. (*Acosta*, at pp. 777-779.) *Montgomery* provided that "[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." (*Montgomery*, at p. 212 [193 L.Ed.2d at p. 622].) As the *Acosta* court observed, section 3051 allows for compliance with *Montgomery* "without resorting to costly resentencing hearings." (*Acosta*, at p. 779.) Because *Montgomery* did not compel the same treatment of young adult offenders, age provided "a constitutionally sufficient basis for distinguishing juvenile LWOP offenders from young adult LWOP offenders." (*Acosta*, at p. 780.)

Other courts have similarly rejected equal protection challenges to section 3051 and have identified rational grounds for the different treatment of young-adult LWOP offenders. In *Williams*, the court explained that the Legislature reasonably could have decided that young-adult offenders who commit the crimes which have been deemed the most morally depraved to justify lifetime incarceration are still sufficiently culpable and sufficiently dangerous. (*In re Williams*, *supra*, 57 Cal.App.5th at pp. 435-436.) In *Jackson*, the court noted that the United States and California Supreme Courts "have repeatedly found the bright line drawn between juveniles and nonjuveniles to be a rational one when it comes to criminal sentencing." (*People v. Jackson*, *supra*, 61 Cal.App.5th at pp. 196-197.) The *Jackson* court further noted that "public safety, and the desire to punish those persons who commit first degree special circumstance murder more harshly than persons who commit first degree murder without aggravating circumstances, provide a plausible basis for our Legislature to treat these two classifications differently for purposes of section 3051." (*Id*. at 200.) In the most recent case, *Morales*, Division Four of the First District Court of Appeal echoed similar grounds in its rational review analysis in denying the defendant's equal protection challenge. (*People v. Morales*, *supra*, 67 Cal.App.5th at pp. 348-349.)

6

Here, even assuming that young adult LWOP offenders and juvenile LWOP offenders are similarly situated for the purpose of section 3051, petitioner's equal protection challenge fails. We cannot say that the Legislature's decision to exclude young adult LWOP offenders from the benefits of section 3051 was made without any rational basis. As discussed above, the courts in *Acosta*, *Jackson*, and *Morales* identified several plausible reasons why the Legislature preserved the line between juveniles and nonjuveniles with respect to eligibility for youth offender parole hearings. These reasons apply equally to our analysis, and we likewise conclude petitioner's equal protection claim is without merit.

For similar reasons, we do not find persuasive petitioner's citation to *Edwards*, which considered the different question of whether a defendant who was convicted of a one-strike sexual offense under section 667.61 could constitutionally be excluded from youth offender parole hearings. (*People v. Edwards*, *supra*, 34 Cal.App.5th at pp. 198-199.) The *Edwards* court concluded the exclusion violated equal protection principles because it exempted "an entire class of youthful offenders convicted of a crime short of homicide" from youth offender parole hearings, while making those hearings available to defendants convicted of first degree murder. (*Id*. at p. 199.) Here, the converse is true: petitioner was convicted of first degree special-circumstance murder, which our Legislature has deemed more serious than first degree murder.[2] Thus, even considering the specific purpose of section 3051, petitioner's case is distinguishable from the defendant in *Edwards*.

---

[2] We note Division One of the Fourth District Court of Appeal disagreed with *Edwards* in *People v. Williams* (2020) 47 Cal.App.5th 475, 492, review granted July 22, 2020, S262229. Our Supreme Court has granted review of *Williams* to decide whether section 3051's exclusion of one-strike sex offenders from youth offender parole hearings violates equal protection principles.

In reaching this conclusion, we acknowledge that many courts which have rejected equal protection challenges to section 3051 have expressed reservation in doing so. As the majority in *Morales* explained, "[T]he United States and California Supreme Courts have recognized that certain traits lessen a juvenile offender's culpability, and that such traits and a juvenile's capacity for reform are not 'crime-specific.' [Citations.] It is, after all, possible that a [young-adult] offender sentenced to LWOP would mature and prove suitable for release at some point during his or her incarceration, just as would a juvenile sentenced to LWOP." (*People v. Morales*, *supra*, 67 Cal.App.5th at p. 349; see also *People v. Acosta*, *supra*, 60 Cal.App.5th at p. 780.) Further, in our Supreme Court's denial of a petition to review in *Jackson*, Justice Liu added a concurring statement asserting his view that section 3051's parole eligibility scheme is in tension with equal protection of the laws. (*People v. Jackson*, *supra*, 61 Cal.App.5th at p. 202 (conc. statement of Liu, J.).) Indeed, several of our colleagues have encouraged the Legislature to consider repealing the exclusion for young-adult LWOP offenders in section 3501, subdivision (h). (See *People v. Acosta*, *supra*, 60 Cal.App.5th at p. 781; *People v. Jackson*, *supra*, 61 Cal.App.5th at pp. 201-202 (conc. opn. of Dato, J.); *People v. Morales*, *supra*, 67 Cal.App.5th at p. 349.)

However, as the *Acosta* court appropriately noted, " '[e]qual protection analysis does not entitle [us] to second-guess the wisdom, fairness, or logic of the law.' " (*People v. Acosta*, *supra*, 60 Cal.App.5th at p. 781.) Even though we reject petitioner's equal protection challenge based on the several rational grounds for treating young-adult LWOP offenders differently from juvenile LWOP offenders, for the reasons discussed above, we join other courts in inviting the Legislature to reconsider section 3051's exclusion of young-adult LWOP offenders from eligibility to a youth offender parole hearing after 25 years of incarceration. But the fact remains that section 3051 does not violate equal protection and petitioner is not entitled to a youth offender parole hearing,

8

and thus he is also not entitled to a proceeding pursuant to *Franklin* and *Cook* to preserve evidence for an inevitable youth offender parole hearing.

## II

*Whether Petitioner's Sentence Constitutes Cruel*

*And Unusual Punishment Is Forfeited And Not Cognizable On Appeal*

Petitioner contends his mandatory LWOP sentence constitutes cruel and unusual punishment. The People argue petitioner forfeited this claim by not raising it in the trial court. Petitioner counters that he could not have raised this claim at the time of his sentencing because the United States Supreme Court cases he relies upon on appeal were not yet decided. The problem with petitioner's argument is that he is not appealing from the imposition of his sentence, but from the recent denial of his petition under section 1203.01. At the time of that petition, the United States Supreme Court cases he relies upon in his briefing had been decided. Indeed, those cases provided the very basis for our Supreme Court's holding that section 1203.01 could be used for the purpose of creating a record for use at an eventual youth offender parole hearing. (*In re Cook*, *supra*, 7 Cal.5th at pp. 447-452.) Petitioner failed to advance his cruel and unusual punishment argument in his section 1203.01 petition, thus forfeiting it on appeal of that petition. In any event, a cruel and unusual argument would not have been entertained by the trial court when ruling on petitioner's section 1203.01 petition. "In cases with final judgments, section 1203.01 gives the trial court authority to conduct an evidence preservation proceeding as envisioned in *Franklin*." (*In re Cook*, at p. 452.) It does not permit petitioner to advance legal arguments meant to undermine the validity of his sentence or disturb the finality of his state conviction. (*Id.* at p. 451.) Thus, in addition to being forfeited, petitioner's cruel and unusual punishment argument is not cognizable on appeal of his section 1203.01 petition. To the extent petitioner would like to challenge the constitutionality of his imposed sentence based on cases decided after his judgment was final, he may file a petition for writ of habeas corpus.

DISPOSITION

The judgment is affirmed.

/s/
Robie, J.

We concur:

/s/
Raye, P. J.

/s/
Hull, J.