Filed 10/23/25  P. v. Cullens CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

BRIAN GARY CULLENS,

    Defendant and Appellant.

E084161

(Super.Ct.No. FVA019991)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Ingrid Adamson Uhler, Judge.  (Retired Judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Brian Gary Cullens appeals from the trial court's resentencing decision after it conducted a full resentencing hearing under Penal Code section 1172.75.[1] Defendant contends remand for a new sentencing hearing is necessary because the trial court was unaware of its discretion to impose a lesser firearm enhancement under section 12022.53. Alternatively, defendant argues his attorney rendered ineffective assistance of counsel at the hearing by failing to request this relief. As we explain *post*, we find defendant's arguments unavailing. We therefore affirm the court's resentencing decision.

## BACKGROUND

In October 2009, a jury found defendant guilty of second degree murder (§ 187, subd. (a)) and assault with a deadly weapon (§ 245, subd. (a)(2)). (See *People v. Cullens* (Mar. 24, 2011, E050409) [nonpub. opn.].) The jury also found firearm allegations on the murder count to be true under subdivisions (b), (c), and (d), of section 12022.53. In particular, the jury found that in committing the murder defendant personally used a firearm (§ 12022.53, subd. (b)), personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), and personally and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)). The jury further found true on the assault count that defendant personally used a firearm (§ 12022.5, subd. (a)). In a court trial on defendant's priors, the trial court found true that defendant had suffered a prior serious and violent felony conviction, namely for a robbery in 1987 (§§ 667, subd. (b)-(i),

---

[1] All further statutory references are to the Penal Code, unless noted otherwise.

2

1170.12,subd. (a)-(d)), a prior serious felony conviction (the 1987 robbery; § 667, subd. (a)(1)), and he had served two prior prison terms (§ 667.5, subd. (b)), one for the 1987 robbery conviction and another for manufacturing a controlled substance.

The trial court originally sentenced defendant to 55 years to life in state prison, plus a determinate term of 7 years, with credit for time served. The sentence consisted of an indeterminate term of 30 years to life (15 years to life doubled pursuant to the Three Strikes law) on the murder count, a consecutive term of 25 years to life for the firearm enhancement on that count (§ 12022.53, subd. (d)), plus consecutive determinate terms of five years for the prior serious felony enhancement and a year each for the prior prison term enhancements. The sentence also included concurrent terms of six years and four years, respectively, on the assault count and its firearm enhancement. Defendant's priors were modified on appeal to reflect that he was convicted of attempted robbery in 1987— still a strike prior—rather than robbery, and to strike one of his prison priors.

In 2024, the trial court conducted a full resentencing hearing under section 1172.75. Defendant testified. His attorney reminded him on the record that his testimony had dual significance. Not only would it impact the trial court's resentencing decision, but the parole board likely would review it when he became eligible for his elderly parole program (EPP) hearing, then due in 2028. (See § 3055, subd. (a) [establishing EPP].)

In his testimony, defendant recounted his view of the confrontation and background to the incident in which he shot and killed the victim, Donald Marshall. Defendant acknowledged his history of prior prison commitments and that he had two

3

disciplinary "issues" while serving his current term. He explained the reform measures he had undertaken in prison, including obtaining his GED, taking college-level classes, vocation training, and participating in more than 40 eight-week courses on topics that included anger management, victim awareness, childhood trauma, and avoiding "criminal thinking." He had gained and maintained sobriety in prison and, if released, would help take care of his aging mother.

Over the course of the hearing, the trial court and the attorneys had several colloquies regarding potential resentencing outcomes. At the outset of the hearing, in a discussion between the attorneys and the court, the prosecutor acknowledged the court's authority to strike defendant's firearm enhancements. Summarizing defendant's sentence, the prosecutor stated it was "55 [years to life indeterminate] plus 7 [years determinate]. [U]nless you granted him a *Romero* or struck the gun stuff." The prosecutor continued, "Even if you got rid of the gun stuff—even if you got rid of everything, he [has] 15 to life" as his minimum sentence. In that scenario, defense counsel acknowledged defendant would "come up for parole almost immediately," but distinguished it as regular "lifer parole," distinct from an EPP hearing. Defense counsel stated, "[I]t's lifer parole. Your chances are about 1 percent." Against that backdrop, the court gave "an indicated [sentence] of 40 to life" for defense counsel to convey to his client, specifying, "That's the minimum."

Back in open court, with defendant appearing by a video call, the court informed him of its indicated sentence and that a continuance would be needed for victim impact statements, if any. The court told defendant: "[T]he minimum that I could impose would

4

be 40 to life; okay? I wouldn't go anything beyond that. So it would be second-degree [murder] plus the [gun] use [enhancement] for 40 to life. That's the minimum." The court also indicated that as part of its sentencing decision, "I can strike the five-year prior and your one-year priors and save you seven years right from the top."

After the court expressly acknowledged defendant was 62 years old, defense counsel then spoke to defendant on the record to stress "it's incumbent upon you to just keep doing what you're doing—the classes, the group therapy, all of that." Defense counsel explained his position to defendant that "even if you got" less than what the court gave as its indicated sentence, such as "25 to life, which you're not getting," EPP relief was more likely than regular parole on his life sentence. Counsel emphasized that focusing on his EPP eligibility and continuing his positive reform efforts "greatly improves your" prospects for a potential EPP parole grant "from maybe a 1 percent chance [at a 'lifer' parole hearing] to maybe 10 percent, okay?"

At the close of the hearing, the court again complimented defendant on his reform efforts, highlighting several and commenting, "[A]ll of that is very positive." When defendant asked the court, "[Y]ou can't go any lower than 40 years[?]" the court answered, "No. That would be the minimum." The court explained, "That's as far as I'm concerned. In terms of knowing all the facts of the case, I would go nothing lower than the 40 to life." Addressing defendant's firearm enhancements specifically, the court stated, "I do look at everything," The court continued, however: "But normally when there's a gun enhancement, I'm very, very reluctant to do anything but what the original trial court did because of the loss of life and the use of the weapon." Still, the court

5

reiterated: "[H]owever, I'll take everything in[to] consideration. But I would consider maybe lowering it from 62 [years] to life to 40 to life."

Defendant waived his presence for resentencing at the continued hearing. At resentencing, the court noted without specifics regarding defendant's testimony that it "did take issue in terms of the veracity in terms of what he said during the Zoom hearing." The court declined to reduce defendant's sentence to 40 years to life or further below that. Instead, the court struck defendant's five-year prior serious felony term and any remaining prison priors, so that "[h]is new sentence will be strictly 55 years to life."

## DISCUSSION

Defendant contends the trial court's "Failure To Consider" striking his sentence of 25 years to life under subdivision (d) of section 12022.53, and instead impose a lesser included 10-year sentence under subdivision (b) of that section, requires remand for resentencing. (Boldface omitted.) Defendant argues there is "no indication that the trial court understood it had [this] discretion," a sentencing and resentencing choice the Supreme Court confirmed in *People v. Tirado* (2022) 12 Cal.5th 688, 700.

The People answer that defendant forfeited this challenge to the court's discretionary sentencing authority by failing to seek modification of defendant's sentence in this manner below. (See *People v. Scott* (1994) 9 Cal.4th 331, 355-356 [attacks on discretionary sentencing decisions generally "cannot be raised for the first time on appeal"].) Given that defendant also asserts his attorney for the resentencing hearing rendered ineffective assistance of counsel by failing to request the specific sentence

6

reduction defendant now raises, we will briefly address defendant's claim in the interest of judicial economy.

" 'Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing.' [Citation.] 'Remand for resentencing is not required, however, if the record demonstrates the trial court was aware of its sentencing discretion. [Citations.] Further, remand is unnecessary if the record is silent concerning whether the trial court misunderstood its sentencing discretion. Error may not be presumed from a silent record. [Citation.] " '[A] trial court is presumed to have been aware of and followed the applicable law.' " ' " (*People v. Czirban* (2021) 67 Cal.App.5th 1073, 1096-1097 (*Czirban*).)

There is no merit to defendant's claim that the trial court misunderstood the scope of its sentencing discretion. Defendant insists that the record "lacks any indication" the trial court was aware of its discretion to impose a lesser firearm enhancement and "nowhere is there an indication" the court acknowledged such discretion and expressly rejected it. This approach, however, turns on its head the silent record presumption governing our appellate review. (*Czirban*, *supra*, 67 Cal.App.5th at pp. 1096-1097.) Absent affirmative evidence in the record that the trial court misunderstood its discretion, we presume the court correctly understood and applied the law (Evid. Code, § 664), including the full panoply of its sentencing discretion. (See, e.g., *Czirban*, at pp. 1096-

7

1097; see also generally *People v. Ramirez* (2021) 10 Cal.App.5th 983, 1042; *People v. Stowell* (2003) 31 Cal.4th 1107, 1114.)

Contrary to defendant's claim, moreover, the record includes multiple references positively indicating the court understood its discretion. The hearing commenced with the prosecutor stating for the record that the court had authority to reduce the firearm enhancements, even getting "rid of the gun stuff" entirely, and the hearing proceeded with that outcome as at least a theoretical possibility. The parties and the court contemplated, for instance, reductions in defendant's sentence to life terms of just 15 years (by eliminating all but defendant's base sentence for his murder conviction) and 25 years (achievable by adding to a base 15-year life sentence only the 10-year firearm enhancement that defendant now requests). The court rejected these options. The court also expressly told defendant that, while it was "normally . . . very, very reluctant to do anything but what the original trial court did" under the present circumstances, it would nevertheless "take everything in[to] consideration" and "look at everything," including "the enhancements." Defendant's enhancements were all solely related to firearms, belying defendant's argument the court did not understand its sentencing authority to reduce them.

For the same reasons, we find no merit in defendant's alternative argument that he received ineffective assistance of counsel. Establishing ineffective assistance of counsel requires two predicate showings. First, the defendant must establish that counsel's representation fell below an objective standard of reasonableness, and second, that the deficient representation was prejudicial, i.e., there is a reasonable probability that but for

8

counsel's failings, the result would have been more favorable. (*In re Neely* (1993) 6 Cal.4th 901, 908; *Strickland v. Washington* (1984) 466 U.S. 668, 687, 694–695.) In this context, that means a better resentencing outcome for defendant had counsel expressly sought the 10-year firearm enhancement under section 12022.53, subdivision (b), in lieu of the 25-year subdivision (d) term that the court reimposed.

In considering an ineffective assistance of counsel claim (IAC), a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." (*Strickland*, *supra*, 466 U.S. at p. 697; *People v. Fairbanks* (1997) 16 Cal.4th 1223, 1241.) That is the case here, where the record reflects no reasonable probability of success for defendant on his new appellate argument. As noted, the record indicates the trial court understood its sentencing discretion, including its authority to reduce defendant's sentence for his gun enhancements. The court simply declined to do so. Defendant's IAC claim therefore fails.[2]

---

[2] For the sake of completeness, we address a further resentencing claim made by defendant in his opening brief, but left undeveloped. Defendant invokes section 1172.75, subdivision (d)(1), which provides: "Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." As the People point out, defendant did in fact receive a reduced sentence. Accordingly, we do not see how this subdivision is unmet by the court's resentencing decision or otherwise relevant on appeal. Neither defendant's opening brief nor his reply illuminate the matter. Defendant's inchoate claim furnishes no basis to question the trial court's ruling.

**DISPOSITION**

The trial court's resentencing decision is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____

J.

We concur:

McKINSTER _____

Acting P. J.

MENETREZ _____

J.